(No. 66617.—

CARSON PIRIE SCOTT & COMPANY, Appellant, v. THE STATE OF ILLINOIS DEPARTMENT OF EMPLOYMENT SECURITY, Appellee.

*Opinion filed September 20, 1989.*

24

Ralph A. Morris and Mark A. Casciari, of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney and Robert J. Ruiz, Solicitors General, and Rosalyn B. Kaplan and Barry Layfer, Assistant Attorneys General, of Chicago, of counsel), for appellee.

Robert F. Forrer and Joan M. Kubalanza, of Chicago (Wilson & McIlvaine, of counsel), for *amici curiae* Illinois Retail Merchants Association *et al.*

JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, Carson Pirie Scott & Company (Carson), filed suit in the circuit court of Cook County seeking review of a final decision of the Director of Labor (now the Director of Employment Security) (the Director) denying its application for cancellation of certain benefit wage charges to its account under the Unemployment Insurance Act (Ill. Rev. Stat. 1981, ch. 48, par. 300 *et seq.*) (the Act). The circuit court reversed the administrative decision and the Director appealed, and Carson cross-appealed. The appellate court, with one justice dissenting,

reversed the decision of the circuit court and reinstated the final administrative decision. (164 Ill. App. 3d 530.) We allowed Carson's petition for leave to appeal (107 Ill. 2d R. 315) and granted the Illinois Retail Merchants Association, Illinois State Chamber of Commerce and Association of Unemployment Tax Organizations leave to file a consolidated brief as *amici curiae.*

The main issue on appeal concerns the scope of relief available under section 1508 of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 578) to employers who have been deprived of statutorily mandated notice of certain findings, determinations and decisions of the Department of Labor (now the Department of Employment Security) (the Department).

The purpose of the Act is to afford relief to those who are involuntarily unemployed and to ameliorate the economic insecurity incident to involuntary unemployment. (Ill. Rev. Stat. 1981, ch. 48, par. 300; see Bernstein, *The Illinois Unemployment Insurance Act,* Ill. Ann. Stat., ch. 48, at XX (Smith-Hurd 1986) (hereinafter cited as Bernstein).) To this end, the Act establishes a system to collect contributions from employers and to pay benefits to eligible unemployed persons. The primary source of income to the Illinois Unemployment Trust Fund is contributions assessed from Illinois employers. Although initially each employer must contribute to the fund according to a statutory rate, the Department, after a prescribed time, determines an employer's individual, variable contribution rate through use of an experience rating system. Under this system, the cost of fund replenishment among employers is allocated on the basis of their experience with the risk of unemployment. (Bernstein, at XLI.) For these reasons, an employer whose current or former employees received proportionately more benefits will pay contributions at a higher

rate than an employer whose former employees received fewer benefits from the fund.

The formula used to determine the experience-rated unemployment tax is:

$$\text{benefit wage ratio} \times \text{state experience factor} + \text{emergency rate} = \text{contribution rate}$$

The case at bar concerns only the benefit wage ratio.

An individual's "benefit wages" are a statutorily set portion of the wages which were paid by an employer to him during his base period (Ill. Rev. Stat. 1981, ch. 48, par. 571), while an employer's "benefit wages" are the total benefit wages assigned for all its former employees who received unemployment benefits (Ill. Rev. Stat. 1981, ch. 48, par. 572).

The total of an employer's benefit wages for 12 consecutive calendar quarters becomes the numerator of a fraction known as the benefit wage ratio. The benefit wage ratio is the first element of the formula used to calculate the employer's contribution rate. A new contribution rate is calculated for each year, using a benefit wage ratio based upon the 12 calendar quarters ending six months prior to the rate year in question. (Ill. Rev. Stat. 1981, ch. 48, par. 573.) The amount of benefit wages attributed to an employer for any particular quarter, therefore, will be part of the calculation of its contribution rates for three years.

For these reasons, there is a direct relationship between an increase in an employer's benefit wages and an increase in the employer's tax. A high amount of benefit wages will increase the employer's contribution rates; conversely, a reduction of benefit wages will reduce the employer's contribution rate for subsequent years.

The employer continues to carry the benefit wage charges unless and until there is a reversal of the claim-

ant's eligibility for the benefits. The fact that benefits are paid causes benefit wage charges to accrue immediately against the employer, even if it is eventually concluded that the claimant was ineligible to receive benefits. Ill. Rev. Stat. 1981, ch. 48, par. 571.

Section 1508 of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 578) requires the Director to "periodically furnish each employer with a statement of the wages of his workers or former workers which became his benefit wages." Section 1508 further provides a method for employers to contest a statement of benefit wages by making an "application for revision." The case at bar concerns Carson's application for revision of a statement of benefit wages mailed to it by the Department.

On March 13, 1981, the Department mailed to Carson a statement of benefit wages, as required by section 1508, covering the period from October 1, 1980, until December 31, 1980. The statement listed 484 benefit wage charges. By letters dated April 20 and 21, 1981, Carson submitted an application for revision of the statement of benefit wages, requesting cancellation of 246 of the benefit wage charges. The Director allowed the application in part and denied it in part, cancelling 75 charges entirely or in part, adjusted Carson's tax accordingly, and indicated that eight additional charges would be cancelled in the future.

On March 18, 1982, Carson acknowledged receipt of the Director's order and requested that the Director reconsider the remaining contested charges listed in the application or schedule a hearing on the matter. The Director issued an order denying cancellation of three benefit wage charges which were previously unaddressed and Carson withdrew its request on two of those charges and renewed its request for further consideration of the remaining charges. By an order dated September 1, 1982, the Director cancelled certain additional charges

and denied Carson's request for cancellation of others. The Director subsequently authorized a hearing to be held on the remaining charges; Carson withdrew its protest to 44 charges prior to the hearing.

On October 21, 1982, a representative of the Director conducted an evidentiary hearing and received evidence and testimony concerning the remaining contested charges. The hearing officer subsequently recommended cancellation of 21 more charges and affirmance of the balance of the Director's previous orders denying requested cancellation. Carson appealed the hearing officer's refusal to cancel 57 of the 58 remaining charges. In an order dated April 12, 1983, the Director issued a final decision adopting most of the hearing officer's recommendations, and cancelled the recommended charges plus one additional charge. Fifty-six charges, therefore, remained at issue following this order.

On May 17, 1983, Carson filed a complaint for administrative review of the Director's final order. The circuit court issued its memorandum of decision on October 3, 1985, reversing the Director's final order, holding that Carson was entitled to cancellation of all remaining charges at issue. Carson then filed a motion for an award of reasonable expenses of litigation including attorney fees, based upon the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1985, ch. 127, par. 1014.1(b)). The trial court denied the motion. The Department appealed the circuit court's decision and Carson cross-appealed the circuit court's denial of Carson's motion for expenses. On appeal, the Director agreed to cancel five of the contested benefit wage charges; the 51 remaining charges were the subject of the appeal.

The appellate court, with one justice dissenting, reversed the decision of the circuit court as to Carson's complaint, finding that Carson did not have standing to rely on section 1508 for relief. The court held that to be

eligible to object to benefit wage charges under section 1508, employers must establish that: (1) they were entitled to notice of the findings, reconsidered findings, determinations or reconsidered determinations of hearing officers and claims adjudicators concerning the claims-processing sections of the Act, sections 701 through 703 (Ill. Rev. Stat. 1981, ch. 48, pars. 451 through 453); (2) they did not receive such required notice; and (3) they made a "sufficient" application for revision of wage benefit charges. 164 Ill. App. 3d at 537, 540.

Carson contends that the Department's view of section 1508, as adopted by the appellate court, allows the Department to deprive employers of their due process right under the Act to notice and a meaningful opportunity to be heard. Carson argues that the appellate court incorrectly created standing barriers to second-chance relief under section 1508, improperly denying relief to employers, such as itself, which have not received statutorily mandated notice of prior departmental decisions.

The Department counters that the appellate court correctly found that section 1508 places specific limitations upon an employer's ability to secure cancellation of benefit wage charges. The Department further argues that the appellate court properly found that Carson had not met section 1508 standing requirements in the case at bar. At the time pertinent to this appeal, section 1508 stated:

"The Director shall periodically furnish each employer with a statement of the wages of his workers or former workers which became his benefit wages together with the names of such workers or former workers, and any such statement, in absence of an application for revision thereof within 45 days from the date of mailing of such statement to his last known address, shall be conclusive and final upon the employer for all purposes and in all proceedings whatsoever. Such application for revision shall be in the form and manner prescribed by regulation

of the Director. If the Director shall deem any application for revision insufficient, he shall rule such insufficient application stricken and shall serve notice of such ruling and the basis therefor upon the employer. Such ruling shall be final and conclusive upon the employer unless he shall file a sufficient application for revision within 20 days from the date of service of notice of such ruling. Upon receipt of a sufficient application for revision of such statement within the time allowed, the Director shall order such application allowed in whole or in part or shall order that such application for revision be denied and shall serve notice upon the employer of such order. Such order of the Director shall be final and conclusive at the expiration of 20 days from the date of service of such notice unless the employer shall have filed with the Director a written protest and a petition for hearing, specifying his objections thereto. Upon receipt of such petition within the 20 days allowed, the Director shall fix the time and place for a hearing and shall notify the employer thereof. At any hearing held as herein provided, the order of the Director shall be prima facie correct and the burden shall be upon the protesting employer to prove that it is incorrect. All of the provisions of this Act, applicable to hearings conducted pursuant to Section 2200 and not inconsistent with the provisions of this Section, shall be applicable to hearings conducted pursuant to this Section. No employer shall have the right to object to the benefit wages with respect to any worker as shown on such statement unless he shall first show that such benefit wages arose as a result of benefits paid to such worker in accordance with a finding, reconsidered finding, determination, or reconsidered determination, to which such employer was a party entitled to notice thereof, as provided by Sections 701 to 703, inclusive, and shall further show that he was not notified of such finding, reconsidered finding, determination, or reconsidered determination in accordance with the requirements of Sections 701 to 703, inclusive. Nothing herein contained shall abridge the right of any employer at such hearing to object to such statement of benefit wages on

the ground that it is incorrect by reason of a clerical error made by the Director or any of his employees. The employer shall be promptly notified, by mail, of the Director's decision. Such decision shall be final and conclusive unless review is had within the time and in the manner provided by Section 2205." Ill. Rev. Stat. 1981, ch. 48, par. 578.

Before examining the statute, we note that the fundamental principle of statutory construction is to give effect to the intent of the legislature. (*American Country Insurance Co. v. Wilcoxon* (1989), 127 Ill. 2d 230, 238; *People v. Parker* (1988), 123 Ill. 2d 204, 209.) Courts should first look to the statutory language as the best indication of the intent of the drafters. (*American Country Insurance Co.*, 127 Ill. 2d at 238; *County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 151.) Although it is generally recognized that courts will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute, agency interpretations are not binding on the courts (*Geary v. Dominick's Finer Foods, Inc.* (1989), 129 Ill. 2d 389, 414), and agency action that is inconsistent with the statute or regulations must be overturned (*Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 152, citing *Shepard v. Merit Systems Protection Board* (D.C. Cir. 1981), 652 F.2d 1040, 1043). For these reasons, we are not bound by the Department's view of section 1508, and exercise independent review. See *Flex v. Department of Labor, Board of Review* (1984), 125 Ill. App. 3d 1021, 1023-24; *Johnson v. City of Evanston* (1976), 39 Ill. App. 3d 419, 423.

The plain language of section 1508 indicates that it provides employers, who have been deprived of notice that they were charged for benefit wages approved by

the Department, an opportunity to challenge such charges. Carson contends that once an employer shows that it was entitled to notice and did not receive notice of benefits paid to a claimant in accordance with a finding, reconsidered finding, determination or reconsidered determination, as the statute requires, the employer is entitled to cancellation of those charges. The language of section 1508, however, does not say that an employer who does not receive notice is automatically entitled to cancellation. The statute gives employers who failed to receive required notice the "right to object to the benefit wages." (Ill. Rev. Stat. 1981, ch. 48, par. 578.) The statute further directs that upon receipt of a "sufficient application *** the Director shall order such application allowed in whole or in part or shall order that such application for revision be denied." Ill. Rev. Stat. 1981, ch. 48, par. 578.

At the time pertinent to this appeal, section 1508 provided relief to an employer denied notice of benefits paid to claimants "in accordance with a finding, reconsidered finding, determination, or reconsidered determination, to which such employer was a party entitled to notice thereof, as provided by Sections 701 to 703, inclusive, and [who] further show[s] that he was not notified of such finding, reconsidered finding, determination, or reconsidered determination." (Ill. Rev. Stat. 1981, ch. 48, par. 578.) As section 1508 explicitly spelled out that it was designed to cover the Department's failure to give notice of proceedings under sections 701 to 703 of the Act, we turn to a brief examination of those sections.

Section 701 of the Act requires a claims adjudicator to make a finding on the first claim filed by a claimant for a benefit year. (Ill. Rev. Stat. 1981, ch. 48, par. 451.) A finding is defined as a statement of the amount of wages for insured work paid to a claimant during each quarter in the base period by each employer. In language

pertinent to this appeal, section 701 establishes the first of several prompt-notice requirements for the benefit of the claimant and the claimant's former employer:

"[The claims adjudicator] shall promptly notify the claimant thereof and shall notify his most recent employing unit that such claim has been filed. The claims adjudicator shall promptly notify the claimant, and such other party to the 'finding' as the Director may by regulation prescribe, of his 'finding,' to the extent of such party's interest in the 'finding.'" (Ill. Rev. Stat. 1981, ch. 48, par. 451.)

The Department, by regulation, has identified not only the claimant's last employer but also any other base-period employers as parties entitled to notice of a section 701 finding.

Section 702 of the Act provides that the claims adjudicator shall make a "determination" on the claim, which states whether or not the claimant is eligible for benefits or waiting-period credit, and the sum to be paid. Section 702 provides that prompt notice of a determination must be given by the Department to an employer that had filed a timely "sufficient" allegation of a claimant's ineligibility for benefits and prompt notice to an employer that its allegation of ineligibility is "insufficient" if the Department so determines:

"The claims adjudicator shall promptly notify the claimant and such employing unit as shall, within the time and in the manner prescribed by the Director, have filed a sufficient allegation that the claimant is ineligible to receive benefits or waiting period credit for said week, of his 'determination' and the reasons therefor. *** If the claims adjudicator deems an allegation insufficient, he shall make a decision accordingly, and shall notify the employing unit of such decision and the reasons therefor. Such decision may be appealed by the employing unit to a Referee within the time limits prescribed by Section 800 for appeal from a 'determination'. Any such appeal, and

any appeal from the Referee's decision thereon, shall be governed by the applicable provisions of Sections 801, 803, 804 and 805." Ill. Rev. Stat. 1981, ch. 48, par. 452.

Section 703 provides that findings and determinations may be reconsidered and, if they are reconsidered, prompt notice again must be given to the employer.

This appeal concerns the Department's failure to give Carson notice required under sections 701, 702, 801 and 803 of the Act. The parties have grouped the 51 charges into three main categories corresponding to the Department's failure to give the notice required by these sections; category I concerns the failure of the Department to give the notice required by section 701; category II, section 702; and category III, sections 801 and 803.

## Category I

The four charges listed under category I involve the failure of the Department to provide Carson with the notice required by section 701 upon findings made by a claims adjudicator. (Because we agree with the Director that B. Mitchell is properly classified under category II, there are four charges at issue under category I, not five, as Carson contends.) Although the Director admits that Carson did not receive the notice required by section 701 concerning the four charges the parties list under category I, the Director argues, and the appellate court held, that the Director's refusal to cancel these charges under section 1508 is justified because Carson did not provide, in its application for revision, any reasons to support cancellation.

Section 1508 requires that an application for revision "shall be in the form and manner prescribed by regulation of the Director." (Ill. Rev. Stat. 1981, ch. 48, par. 578.) The Director, pursuant to her authority, promulgated Regulation 302 (modified version codified at 56 Ill. Adm. Code §2725.100 (1988), eff. July 1, 1987) (11 Ill.

Reg. 11065), which required a sufficient application to set forth, in detail, *inter alia,* a statement of the reasons for the application for revision of such benefit wage statement. In the four charges at issue in category I, Carson addressed this requirement by listing lack of required notice as the reason the four charges should be cancelled. Carson argues that this is a proper reason supporting cancellation of these four charges, and contends, therefore, that its application was sufficient, entitling it to relief. Carson also contends that Regulation 302 added a substantive requirement to the statute.

As we noted earlier, section 1508 does not automatically provide for cancellation of charges simply because an employer was denied the notice it was due. Section 1508 allows employers to object to charges when they were denied notice, and provides that the Director may order an application for revision allowed in whole or part or denied. Simply put, Carson wants more than it was originally entitled to. If notice had been given earlier, as it should have been, Carson would not have been entitled to cancellation; it would have been entitled to object to a claimant's eligibility for unemployment benefits by providing reasons for such claimant's ineligibility.

Section 1508 clearly gives Carson the right to object to the four charges at issue here, but Carson's right to object, based on the Department's improper denial of notice to it, does not, standing alone, warrant cancellation of the charges. If an employer does not provide the Department with any reason, as required by Regulation 302, why a particular claimant is ineligible for benefits, the Director has no information to evaluate concerning that claimant's eligibility.

Because section 1508, on its face, does not require an employer to provide any reason for cancellation, the Director cannot refuse to accept an employer's application for revision for the sole reason that an employer's appli-

cation for revision does not provide any reason for cancellation except lack of notice; if the employer has met the express requirements of section 1508—for purposes of this appeal, that it was entitled to notice under sections 701 to 703, and did not receive that notice—it is entitled to object to a charge based on that failure of notice. If the employer provides no other reason for cancellation of that charge, however, the Director is left with little reason to cancel the charge.

We find, therefore, that the appellate court incorrectly interpreted section 1508 by holding that in order to have standing to object to a charge under section 1508, an employer's application for revision must contain a reason other than failure to receive notice that was due it. Because section 1508 does not automatically entitle an employer that makes a sufficient application to relief simply because it was deprived of notice was due it, however, we believe that the Director's decision not to cancel contested charges, when no reason is given to do so, is justified. Although the tender of reasons to support a revision is not a statutory prerequisite to relief, it is, for all practical purposes, reasonably necessary in order to provide the Director with some basis, other than simple lack of notice, for cancelling contested charges. While an application may be "sufficient" for purposes of section 1508, entitling an employer to consideration and an order from the Director allowing or denying an application, the Director is not required to grant relief in the form of cancellation of charges when she had no basis in the application for so doing.

On October 21, 1982, a representative of the Director conducted an evidentiary hearing and received evidence and testimony concerning, *inter alia*, the four charges involved here. In the report of the Director's representative, dated December 30, 1982, the representative did not recommend cancelling these four charges because

Carson did not submit any evidence to support its allegations that these four claimants were ineligible for benefits. In her final order, the Director adopted this view. Because Carson did receive a hearing, at which it was allowed to present evidence and testimony concerning these four charges, we find, as did the trial judge, that the Department addressed the merits of Carson's objections concerning these charges and that the decision not to cancel these charges because of lack of sufficient information was not unreasonable or unjust.

## Category II

The 31 charges listed under category II concern the Department's failure to provide Carson with the notice required by section 702. (Because we find that Carson, in its reply brief, acceded to the Director's classification of G. Go under category II, and that Carson correctly classified E. Schaller under category II, the 31 category II charges include B. Mitchell, G. Go, and E. Schaller.) The Director found that Carson's application was insufficient concerning the 31 charges under this category because Carson failed to meet the requirement, under section 1508, that an employer show that the contested charges are based on benefits paid to a claimant in accordance with a determination of which the employer was entitled to notice. More specifically, the Director held that because Carson's allegations of ineligibility, made pursuant to section 702, were themselves insufficient, Carson was not entitled to notice of determinations concerning these claimants. Carson, the Director argues, was only entitled to notice of a "decision" that its allegations were insufficient under section 702; failure of the Department to give notice of a section 702 decision of insufficiency, therefore, is not a basis for relief under section 1508. The appellate court adopted the Director's reasoning, finding that section 1508 "does not

confer standing to an employer entitled to notice of a section 702 decision of insufficiency." 164 Ill. App. 3d at 541.

Carson contends that the appellate court and Director's view renders the mandatory first-chance notice requirement under section 702 nonobligatory. Carson argues that if the Director's interpretation is adopted, employers will have no section 1508 second-chance relief if the Director decides that an employer's section 702 allegations of claimant ineligibility are insufficient and decides not to give an employer notice of a section 702 decision of insufficiency.

It is uncontested that Carson was not given notice of section 702 decisions of insufficiency. The Director correctly observes that the language of section 1508, by its terms, limits relief under the statute to employers that have been improperly denied notice of, *inter alia*, "determinations," and does not mention failure to give notice of decisions of insufficiency. Because the Department never sent Carson notice of claims adjudicators' decisions that Carson's allegations of ineligibility were insufficient in the cases involved under this category, Carson was never able to amend its allegations to conform to the Department's criteria for sufficiency. Indeed, because of the Department's failure to provide any notice required by section 702 to Carson concerning these 31 charges, Carson had no way of knowing whether its allegations were sufficient (meaning that the Department had failed to send the required notice of a determination that the claimant was eligible for benefits) or were insufficient (meaning that the Department had failed to send the required decision alerting Carson to this fact).

We find that because the Department failed to send any notice to Carson concerning these charges, Carson is not precluded from raising an objection to these charges under section 1508. Because Carson received no section

702 notice from the Department concerning the claims at issue here, Carson was precluded from amending its allegedly insufficient allegations or appealing the Department's decisions of insufficiency. (See Ill. Rev. Stat. 1981, ch. 48, par. 452.) Carson, therefore, was left in limbo concerning these charges. As the Department refused to consider Carson's application for revision concerning these 31 charges because it decided that Carson's original section 702 allegations were insufficient, we believe that Carson is entitled to object to these charges under section 1508, and is entitled to the consideration of these charges and an order from the Director, allowing Carson's application concerning these charges in whole or in part or denying them based on the merits of Carson's application. Were we to hold otherwise, the Department would be able to find, on a *post hoc* basis, when considering a section 1508 application for revision months after an employer had filed an allegation of ineligibility under section 702, that the employer's section 702 allegation of ineligibility was insufficient, enabling the Department to defeat section 1508's goal of providing relief to employers initially denied notice.

## Category III

The 17 charges listed under category III concern the Department's failure to give Carson required notice of Department referee or board of review decisions under sections 801 and 803 (Ill. Rev. Stat. 1981, ch. 48, pars. 471, 473). Both parties agree that Carson received notice of a determination or decision under section 702 and appealed the determinations and decisions, as directed by section 702, to a Department referee. Section 702 states that appeals of claims adjudicators' decisions of insufficiency and determinations of eligibility are to be governed by the applicable provisions of sections 801 through 805 of the Act. After appealing the 16 decisions

and determinations involved here, Carson failed to receive notice of either a referee's initial decision regarding the appeal, or notice of the board of review's decision regarding an appeal of one of these charges from a decision of a referee.

Section 801 provides:

"The Referee or the Director, as the case may be, shall affirm, modify, or set aside the claims adjudicator's 'finding' or 'determination,' or both, as the case may be, or may remand the case, in whole or in part, to the claims adjudicator, and, in such event, shall state the questions requiring further consideration, and give such other instructions as may be necessary. The parties shall be duly notified of such decision, together with the reasons therefor. The decision of the Referee shall be final, unless, within 30 calendar days after the date of mailing of such decision, further appeal to the Board of Review is initiated pursuant to Section 803." (Ill. Rev. Stat. 1981, ch. 48, par. 471.)

In some cases Carson received notice from the referee and appealed to the board of review, but never received notice of its appeal to the board. Section 803 provides:

"Upon receipt of an appeal by any party to the findings and decision of a Referee, the Board of Review shall promptly notify all parties entitled to notice of the Referee's decision that the appeal has been filed, and shall inform each party of the right to apply for a Notice of Right to Sue as provided for in this Section. *** The Board of Review shall make a final determination on the appeal within 120 days of the date of the filing of the appeal and shall notify the parties of its final determination or finding, or both, within the same 120 day period." Ill. Rev. Stat. 1981, ch. 48, par. 473.

The appellate court found that because Carson had received the section 702 notice to which it was entitled, Carson was not eligible for relief under section 1508, which does not refer to sections 801 through 805 of the Act.

Carson argues that if it is precluded from objecting to benefit wage charges because of the Department's failure to give Carson notice, required by sections 801 and 803, of referee and board of review decisions, it will be forever barred from contesting the charges listed in the statement of benefit wages because of the language in section 1508 that "any such statement, in absence of an application for revision thereof within 45 days from the date of mailing of such statement to his [the employer's] last known address, shall be conclusive and final upon the employer for all purposes and in all proceedings whatsoever." (Ill. Rev. Stat. 1981, ch. 48, par. 578.) Moreover, Carson contends, such a holding would render the mandatory notice and hearing provisions of sections 801 and 803 nugatory. Carson also argues that the Director has entertained Carson's referee and board of review objections to benefit wage charges on the merits, and has cancelled some of them; if section 1508 cancellations are not justified in category III cases, Carson contends, the Director would have struck Carson's application for revision on insufficiency grounds.

Carson points out an ambiguity in section 1508. Although section 1508 does not mention section 801 or 803, it does provide that in the absence of an application for revision, the statement of benefit wages becomes "final upon the employer for all purposes and in all proceedings whatsoever." This language presents a conflict, because if Carson is unable to object under section 1508 to the charges on the statement as to which it has been denied notice of referee and board of review decisions, it will be barred from contesting those charges in the future. Under this language, Carson could conceivably be barred from obtaining a notice of right to sue under section 803; Carson also could be barred from initiating any further action under the Act to clear those charges.

Although this court has stated that when a statute's language is clear and unambiguous, courts must enforce the law as enacted without considering other aids (*County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 151), where ambiguity does exist, a court may properly consider, in determining the intent of the legislature, not only the language of the statute, but also the reason and necessity for the law, the evils sought to be remedied and the purpose to be achieved (*American Country Insurance Co. v. Wilcoxon* (1989), 127 Ill. 2d 230, 239, quoting *Stewart v. Industrial Comm'n* (1987), 115 Ill. 2d 337, 341; *City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 341). Moreover, courts presume that the General Assembly, in passing legislation, did not intend absurdity, inconvenience or injustice. *Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 363; *People v. Steppan* (1985), 105 Ill. 2d 310, 316.

The Director contends, citing *Winakor v. Annunzio* (1951), 409 Ill. 236, that the language in section 1508 does not make a statement conclusive on the Department. The Director argues, therefore, that the fact that an uncontested statement of benefit wages becomes final on an employer, under the language of section 1508, does not alter the Department's obligation to cancel benefit wage charges when appropriate under section 706 of the Act.

We believe, however, that the language and purpose of section 1508 support Carson's argument. The language of section 1508 evidences a legislative intent to insure that benefits were not awarded and employers were not taxed on charges as to which employers were deprived of their statutorily mandated notice. Section 1508 acts to protect an employer's right to object to the payment of benefits to claimants it believes are ineligible to receive benefits under the Act. Viewing the statute as a

whole, we believe that the legislature intended to provide a chance for employers that had been deprived of notice a chance to be heard and to protest the payment of benefits to claimants they felt were ineligible and as to whom they would be taxed.

Because of this legislative intent, we find that Carson is entitled to object, under section 1508, to the charges under category III. To interpret the statute to forbid Carson from objecting under section 1508 to such charges would lead to an absurd and unjust result, as the charges, by the plain language of the statute, would become conclusive and final against Carson.

Moreover, such an interpretation would run counter to the intent of the legislature. Our finding is consistent with the legislative intent of providing employers deprived of statutorily required notice a chance to object to charges on their statements of benefit wages. If the intent and purpose of the legislature can be determined from a statute, "words may be modified, altered, or even supplied so as to obviate any repugnancy or inconsistency with the legislative intention." (*People v. Parker* (1988), 123 Ill. 2d 204, 210-11, quoting *People v. Bratcher* (1976), 63 Ill. 2d 534, 543.) Finally, we note that our interpretation squares with the intent of section 1508 of providing an impetus to the Department to fulfill its statutory obligations to give notice. A contrary interpretation would give the Department no reason to honor the referee and board of review procedures in sections 801 and 803 because it could impose a tax without giving employers the notice required by those sections of the Act.

We find, therefore, that the appellate court incorrectly held that Carson did not have standing to object to these charges under section 1508.

We also note that since this case was tried, the legislature has enacted a statutory provision, section 1508.1

of the Act, which provides for cancellation of employer benefit wage charges on the basis of lack of notice of section 701 findings, section 702 determinations, section 703 reconsiderations and section 801 referees' decisions to which an employer was entitled. (Pub. Act 84—1336, eff. Jan. 1, 1987 (Ill. Rev. Stat., 1986 Supp., ch. 48, par. 578.1), as amended by Pub. Act 85—956, eff. Jan. 1, 1988 (Ill. Rev. Stat. 1987, ch. 48, par. 578.1).) Although both parties argue that this new provision lends credibility to their arguments concerning section 1508, they both acknowledge that section 1508.1 does not apply to the case at bar. See 56 Ill. Adm. Code §2770.501 (1988) (section 1508.1 applies only to benefit wages resulting from payment of benefits with respect to benefit years beginning on or after January 1, 1987).

We now turn to Carson's due process argument. Because of our holding in the case at bar, we find that no due process violation occurred.

Although Carson cites cases holding that an unemployment system that does not afford an unemployment benefits claimant notice and a meaningful opportunity to be heard violates his right not to be deprived of property without due process of law (*Cosby v. Ward* (7th Cir. 1988), 843 F.2d 967; *Cuellar v. Texas Employment Comm'n* (5th Cir. 1987), 825 F.2d 930), we note that Carson cites no authority for its proposition that an employer's constitutional due process rights would be violated if it were taxed based on unemployment claims about which it was denied notice. While as a matter of law this statement may be correct, no violation occurred here because Carson was given notice.

Carson has not been deprived of its due process right of notice because notice of benefit wage charges is given upon the issuance of a statement of benefit wages. Actual notice of tax charges is sufficient to satisfy due process. See *Dietman v. Hunter* (1955), 5 Ill. 2d 486, 489;

*People ex rel. Jordan Co. v. Village of Forest View*
(1961), 21 Ill. 2d 384, 400; *Anest v. Lake County* (1986),
147 Ill. App. 3d 243, 247.

As we have held today, a demonstrated failure of the
Department to give required initial notice, under section
701 or 702, or 801 or 803, entitled Carson to a later op-
portunity to be heard, before a benefit wage charge be-
came final, under section 1508. Under section 1508, if
the Director denies an employer's application for revi-
sion, the employer may file a petition for a hearing, and
section 1508 provides that "upon receipt of such petition
within the 20 days allowed, the Director shall fix the
time and place for a hearing." Section 1508 provides
that if the employer is dissatisfied with the Director's fi-
nal decision, the employer may file for judicial review of
the Director's decision under the Administrative Review
Law (Ill. Rev. Stat. 1987, ch. 110, par. 3—101 *et seq.*),
which Carson did. For these reasons we find that Car-
son's due process rights were not violated.

Carson argues that if this court decides in its favor
on the merits of its claims, it is entitled to an award of
reasonable expenses of litigation including attorney fees
under section 1014.1(b) of the Illinois Administrative
Procedure Act (Ill. Rev. Stat. 1985, ch. 127, par.
1014.1(b)). The statute states, in relevant part: "In any
case in which a party has any administrative rule invali-
dated by a court for any reason *** the court shall
award the party bringing the action the reasonable ex-
penses of the litigation, including reasonable attorney's
fees." Ill. Rev. Stat. 1985, ch. 127, par. 1014.1(b).

This issue is properly reviewed under an abuse of dis-
cretion standard. (See *In re Estate of Wernick* (1989),
127 Ill. 2d 61, 77-78 ("decision whether to allow recov-
ery under section 2—611 [Ill. Rev. Stat. 1983, ch. 110,
par. 2—611] is within the sound discretion of the trial
judge and will not be reversed on appeal absent an abuse

of discretion").) We must determine, therefore, whether the trial judge abused his discretion in denying Carson's motion for expenses and fees under this statute.

Carson argues that a finding that it may contest, under section 1508, category II charges—charges based on the Department's failure to give notice of decisions under section 702—would invalidate Department rules codified at 56 Ill. Adm. Code §2720.1 (1988) and 56 Ill. Adm. Code §2725.100(b)(2) (1988). Carson also argues that a finding that it may contest category I charges would invalidate the Department's Regulation 302, now codified at 56 Ill. Adm. Code §2725.100(b)(1) (1988).

The record reveals that in its post-trial motion for an award of reasonable expenses of litigation including attorney fees, Carson relied solely on the alleged invalidation of the Department rule codified at section 2720.1 of the Illinois Administrative Code. Carson's failure to seek relief in the circuit court on the basis of other alleged rule invalidations constitutes a waiver of any such claim for purposes of appeal. See *Harms v. Sprague* (1984), 105 Ill. 2d 215, 225.

We note that since the common law prohibits a prevailing party from recovering attorney fees, statutes which allow for such awards must be strictly construed. See *Hansen v. Illinois Racing Board* (1989), 179 Ill. App. 3d 353, 361; *Navarro v. Edgar* (1986), 145 Ill. App. 3d 413, 415; *Gonzales-Blanco v. Clayton* (1983), 120 Ill. App. 3d 848, 850.

Section 2720.1 is the definitions section of departmental rules and regulations pertaining to the Act. It concerns the definition of "party" under the Act and states, in part:

> " 'Party' means the claimant, and, with respect to issues of nonmonetary eligibility, an employer who files a timely and sufficient protest pursuant to [s]ection 2720.130 of this [p]art [employer protest of benefit payment under

section 702]. Only a party under Sections 702 and 1508 of the Act may appeal a nonmonetary determination or decision of the Agency regarding eligibility for benefits." 56 Ill. Adm. Code §2720.1 (1985).

Section 2720.1 was not effective until January 1, 1985, approximately 19 months after Carson filed its complaint for judicial review. Moreover, this provision was never mentioned by the trial court, and clearly was not invalidated by the trial court's order or this court's decision. For these reasons, we find that the trial court did not abuse its discretion in denying Carson's motion for expenses and attorney fees.

For all the above reasons, the judgment of the appellate court is affirmed in part, vacated in part, and reversed in part. Because we believe that the Director did not incorrectly deny cancellation of the four charges identified under category I, we affirm the appellate court's judgment with regard thereto, which reversed the circuit court's judgment in that regard, although we proceed on grounds different from those on which the appellate court erroneously relied. We vacate the part of the appellate court's judgment that dismissed Carson's cross-appeal as to litigation expenses but affirm the circuit court's judgment denying an award for such expenses. We reverse the judgment of the appellate court as to categories II and III and remand this cause to the Department for further proceedings consistent with this opinion concerning the charges identified by this opinion under those categories.

*Appellate court affirmed in part, reversed in part and vacated in part; circuit court affirmed in part and reversed in part; cause remanded.*

JUSTICE CALVO took no part in the consideration or decision of this case.