THE BOARD OF TRUSTEES OF THE POLICE PENSION FUND OF THE VILLAGE OF WINTHROP HARBOR, Plaintiff-Appellant and Cross-Appellee, v. THE DEPARTMENT OF INSURANCE *et al.*, Defendants-Appellees and Cross-Appellants.

Second District Nos. 2—90—0652, 2—90—0653 cons.

Opinion filed March 22, 1991.

LeRoy W. Gudgeon, of Northfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (William K. Kane and Ann Plunkett-Sheldon, Assistant Attorneys General, of Chicago, of counsel), for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, the Board of Trustees of the Police Pension Fund of the Village of Winthrop Harbor (Board), appeals from the judgment of the circuit court of Lake County affirming the decision of the Department of Insurance of the State of Illinois (Department) that employee contributions to the Winthrop Harbor Police Pension Fund (pension fund) should have commenced on the date of the census, not on the date of the creation of the pension fund. Defendants, the Department and John Washburn, its director, cross-appeal that portion of the order which reversed the Department's order requiring further pension contributions from Officer Taft.

The Federal census of April 1, 1980, showed that the population of the Village of Winthrop Harbor (Village) had exceeded 5,000 people. The Village received a certification of the census figures in March 1981. Because section 3—103 of the Illinois Pension Code (Pension Code) (Ill. Rev. Stat. 1989, ch. 108½, par. 1—101 *et seq.*) mandates

the creation of a pension fund in municipalities of population over 5,000, the Village created the pension fund on April 30, 1981.

On June 10, 1987, defendants notified the Board that the pension fund had failed to comply with sections 22—501 and 22—509 of the Pension Code (Ill. Rev. Stat. 1989, ch. 108½, pars. 22—501, 22—509) during the period of its inception to August 1985. On February 23, 1989, a hearing was held on the matter of the pension fund's noncompliance.

At the hearing, Dwight Anderson, the assistant deputy director of the pension division of the Department, testified that the pension fund was in compliance with all the items in the Department's compliance order except that full contributions to the pension fund were not collected retroactive to the date of the Federal census. William Taft, a trustee of the Board and a Winthrop Harbor police officer, testified that prior to 1981 pension contributions were made to the Illinois Municipal Retirement Fund (Municipal Fund) (see Ill. Rev. Stat. 1989, ch. 108½, par. 7—101 et seq.). After April 30, 1981, the employees made their pension contributions to the pension fund. Taft further testified that he was injured in August 1981 and had been placed on total temporary disability and given a full pension.

The hearing officer found that the Department's interpretation of section 3—109 (Ill. Rev. Stat. 1989, ch. 108½, par. 3—109), that contributions must be made to the pension fund as of the date of the census, should be followed. The hearing officer recommended sanctions be imposed if the Board failed to comply with the order within 30 days. Washburn adopted the findings and recommendations of the hearing officer and ordered the Board to collect contributions due from April 1, 1980, through March 30, 1981, from eight members of the pension fund, including Taft.

The Board filed a complaint for administrative review in the circuit court, contesting the order on the grounds that the findings of fact, conclusions of law and recommendations were contrary to and in excess of the powers of the Department; the decision made by the Board in 1981 was an administrative decision and, as such, was not subject to review or modification by the Department; defendants lacked the authority to impose sanctions on the Board or to order the Board to comply with a decision of the Department; and the order was against the weight of the evidence. The parties submitted briefs supporting their respective positions.

At the hearing in the circuit court, the Board explained that of the eight pension fund members listed in the order, two had been terminated. The money that the members paid to the Municipal Fund for

the time at issue, 4½% of their salaries, was turned over to the pension fund. The difference between that amount and what the individuals owed, 4¼%, should be sought from the members themselves. Of the eight, two, Richter and Schatzley, had been terminated and one, Bone, had retired. Although Taft was on a pension, the Department still wanted contributions from him and Bone.

In its written memorandum, the trial court determined that the contributions accrued from the date of the census. The court, however, modified the order to reflect that Richter and Schatzley were no longer members of the Winthrop Harbor police department and they had received a refund of their total contributions. Thus, it would have been a useless act to require them to pay in money which they would immediately get back. Similarly, Bone, the retired officer, and Taft were no longer "police officers" required to make contributions. The court affirmed the determination that employee contributions must be made from the date that the municipality's population exceeded 5,000 people, but it reversed those portions of the order which required the Village to exact further contributions from Richter, Schatzley, Bone and Taft. The Board's appeal and defendants' cross-appeal were then filed timely. The appeals were consolidated on defendants' motion.

The Board contends that it was error for the trial court to adopt the construction of the police pension fund (Police Fund) (Ill. Rev. Stat. 1989, ch. 108½, par. 3—101 et seq.) advanced by defendants. Generally, a reviewing court will accord deference to the interpretation placed on a statute by the agency charged with its administration and enforcement. (City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268 (1988), 122 Ill. 2d 353, 361.) Although both parties to this action are administrative agencies, in this context, the Department is the agency charged with enforcing a statute. Therefore, its interpretation is entitled to greater weight than the Board's interpretation. (Board of Trustees of the Firemen's Pension Fund v. Department of Insurance (1982), 109 Ill. App. 3d 919, 925.) Still, we are not bound by the Department's interpretation (Carson Pirie Scott & Co. v. State of Illinois Department of Employment Security (1989), 131 Ill. 2d 23, 34), and we will reject it if it is erroneous (American Federation, 122 Ill. 2d at 361).

Under the Illinois Constitution, membership in a local government's pension system is "an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." (Ill. Const. 1970, art. XIII, §5.) The terms of this contractual relationship are governed by the version of the Pension Code in effect at the time the employee became a member of the system. (Di Falco v. Board of

*Trustees of the Firemen's Pension Fund* (1988), 122 Ill. 2d 22, 26.) We will examine the relevant sections of the Pension Code in effect in 1981.

Section 3—101 of the Police Fund provides:

> "In each municipality as defined in Section 3—103 the city council or the board of trustees, as the case may be, shall establish and administer a police pension fund, in the manner prescribed in this Article, for the benefit of its policemen as defined in Sections 3—106 and 3—107 hereof, and of their widows, children and certain other dependants." (Ill. Rev. Stat. 1981, ch. 108½, par. 3—101.)

The Police Fund defines a "municipality" as any city "of not less than 5,000 nor more than 500,000 inhabitants, as determined from the United States Government statistics or a census taken at any time by the city." (Ill. Rev. Stat. 1981, ch. 108½, par. 3—103.) Section 3—109 provides in relevant part:

> "This Article shall not apply to the following persons: *** Any policeman who fails to pay the salary payments or deductions hereinafter defined, computed *** from the date, as determined from the statistics or census provided in Section 3—103, the municipality became subject to this Article by attaining the minimum population." Ill. Rev. Stat. 1981, ch. 108½, par. 3—109(b)(2).

The proper interpretation of a statute must reflect the intent of the legislature. (*Carson Pirie Scott*, 131 Ill. 2d at 34.) The starting point for this determination is the statutory language itself. (*American Country Insurance Co. v. Wilcoxon* (1989), 127 Ill. 2d 230, 238.) In addition, when the statute at issue is a pension statute, it must be construed liberally in favor of the pensioner. *Johnson v. Retirement Board of the Policemen's Annuity & Benefit Fund* (1986), 114 Ill. 2d 518, 521.

Defendants argue that section 3—109 clearly and unambiguously states that contributions must be made as of the date of the census which showed the municipality achieved the requisite population. The Board asserts that, even if the language of section 3—109 is unambiguous, to apply it as written would lead to an absurd and unjust result.

It is presumed that the legislature did not intend absurdity or injustice when it drafted a statute, and if application of the plain language of the statute would lead to an absurd or unjust result, a court may also consider the purpose of the statute. (*Carson Pirie Scott*, 131 Ill. 2d at 45, 46.) In addition, the entire statute must be considered to ascertain the legislative intent. (*American Federation,*

122 Ill. 2d at 364.) The Police Fund requires a municipality to create a pension fund for the benefit of its police officers, their surviving spouses, children and other dependents. (Ill. Rev. Stat. 1981, ch. 108½, par. 3—101.) Police officers assume a duty to protect the public and are required to respond regardless of the hazards involved. (*Johnson*, 114 Ill. 2d at 522.) Pension statutes are to be construed broadly in favor of those who benefit under them. (*Saffold v. City of Chicago* (1989), 192 Ill. App. 3d 827, 831.) In enacting the statute requiring a police pension fund, the legislature sought "to provide for the aged policemen who have served the city for a long period of time." (*Donahue v. Board of Trustees* (1931), 263 Ill. App. 568, 572.) Thus, the Police Fund seeks to afford a pension to police officers who have served for many years and does not seek to limit their eligibility for a pension.

According to the Board, strict interpretation leads to an unjust result because it would require the police officers to contribute to the fund for a period during which they derived no benefit from the fund. The Board presents the following example to demonstrate its argument. If a Winthrop Harbor police officer sustained an injury in June 1980, he would only have had those benefits from his membership in the Municipal Fund, not the pension fund, because the latter fund did not exist in June 1980.

Prior to April 1981, the Winthrop Harbor police officers were members of the Municipal Fund. Under its terms, police officers employed by municipalities which are required to have a police pension fund are excluded from the Municipal Fund. (Ill. Rev. Stat. 1981, ch. 108½, par. 7—109(2)(b).) According to section 7—210(d) of the Municipal Fund, when a member becomes excluded from the Municipal Fund because of eligibility for membership in a Police Fund, that member's rights under the Municipal Fund do not terminate until the member's contributions to that fund have been transferred to the Police Fund. (Ill. Rev. Stat. 1981, ch. 108½, par. 7—210(d).) The provisions of the Police Fund and the Municipal Fund must be read together as part of one statutory scheme. See *Holmes v. Illinois Municipal Retirement Fund* (1989), 185 Ill. App. 3d 282.

Based on the interaction of the two pension fund acts and the purpose behind them, it is apparent that the Board's argument is valid. Further support for the position that one cannot be a member of both the Municipal Fund and a Police Fund at the same time is our supreme court's analysis of the interaction between the Municipal Fund and the Firemen's Fund in *Herhold v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1987), 118 Ill. 2d 436. In that

case, the court confronted the issue whether the amendment to the firemen's pension fund (Firemen's Fund) (Ill. Rev. Stat. 1985, ch. 108½, par. 4—101 et seq.) adding "fire paramedic" to the definition of "fireman" provided that the time the paramedic had been employed in that capacity be considered for determining his status for purposes of disability benefits. The court concluded that the disabled paramedic should receive benefits computed on the length of his entire time of service as a paramedic, not just service from the date the paramedic began contributing to the Firemen's Fund. (Herhold, 118 Ill. 2d at 439-40.) The court explained:

"The Board argues that this interpretation of the statutes gives Herhold a windfall because he received a refund of his contributions to the Municipal Fund while at the same time he was not required to compensate the Firemen's Fund for the period he was a participant in the former fund. The Firemen's Fund refused, however, to accept a transfer of Herhold's contribution to the Municipal Fund because the Firemen's Fund had not accepted the Retirement Systems Reciprocal Act [citation]. *** [T]here was no procedure under which Herhold, had he wished to do so, could have transferred to the Firemen's Fund his contributions previously made to the Municipal Fund. At the same time, the Municipal Fund refunded the contributions Herhold had previously made to it based on its position that an employee could not simultaneously participate in that fund and the Firemen's Fund. There is no justification for penalizing Herhold for the manner in which these two pension funds operated because he had no control over their procedures. Moreover, we find incredible the suggestion that it was the intention of the legislature in conferring upon paramedics the advantage of joining the Firemen's Fund to leave them at the same time without benefits for the service they accrued as paramedics before the legislature offered them the opportunity to join that fund." (Herhold, 118 Ill. 2d at 440.)

The situation in the present cause is analogous to that in Herhold.

Here, the officers were members of the Municipal Fund in 1980. They did not know they were eligible for membership in the Police Fund, nor could they have made contributions to such fund at that time because it did not exist. The officers would not have been able to assert any rights under the Police Fund during the relevant time period because there was no body to which the police officer could file a certificate of disability, a prerequisite to receiving a disability pension under the Police Fund (Ill. Rev. Stat. 1981, ch. 108½, par. 3—115), or

to order payments in the event of a disability (Ill. Rev. Stat. 1981, ch. 108½, par. 3—133), nor any funds from which such payment could have been made. It would be unjust to require police officers to pay for benefits which they did not receive. Thus, strict interpretation of section 3—109 does not reflect the intent of the legislature.

 If the intent and purpose of the legislature can be determined from the statute, a court is authorized to modify, alter or supply words to avoid any inconsistency with the legislative intention. (*Carson Pirie Scott*, 131 Ill. 2d at 46.) The Board requests that we insert the phrase "or within a reasonable time thereafter" into section 3—109. We do not believe that such language is appropriate. Both the Board and defendants confuse a municipality's responsibilities under the Pension Code with that of the individual members of a fund. The Police Fund does not require a municipality to contribute to the fund as of the date of the census, unlike the obligation imposed on the individual fund members by section 3—109. Compare Ill. Rev. Stat. 1989, ch. 108½, par. 3—125, with Ill. Rev. Stat. 1989, ch. 108½, par. 3—109(a)(2)(ii).

 By reading sections 3—109 and 7—210 in conjunction, we conclude that in a situation where the fund is mandated by a population increase, the date from which the contributions must be made by an individual officer should be computed from either the date the municipality attained the requisite population, as determined from the census or statistics, or the date that the member's funds from the Municipal Fund are transferred to the Police Fund, or the date of a police officer's first appointment, whichever is later. See Ill. Rev. Stat. 1989, ch. 108½, pars. 3—109(a)(2)(ii), 7—210(d).

We, therefore, reverse that part of the judgment of the trial court affirming the Department's order finding that the Winthrop Harbor Police Pension Fund should have commenced on April 1, 1980. Regarding defendants' cross-appeal, in light of our conclusion that none of the officers are required to make back payments, we affirm that part of the judgment reversing the Department's ruling which required further pension contributions from Officer Taft.

The judgment of the circuit court of Lake County is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

WOODWARD and INGLIS, JJ., concur.