THE ENVIRONMENTAL PROTECTION AGENCY, Petitioner-Appellant, v. THE POLLUTION CONTROL BOARD et al., Respondents-Appellees.

Fifth District   No. 5—90—0785

Opinion filed October 2, 1991.

Roland W. Burris, Attorney General, of Springfield (Christine Zeman and John J. Kim, Assistant Attorneys General, of counsel), for petitioner.

Roland W. Burris, Attorney General, of Springfield (Mark P. Miller, Special Assistant Attorney General, of Urbana, of counsel), for respondent Pollution Control Board.

JUSTICE HARRISON delivered the opinion of the court:

The Illinois Environmental Protection Agency (the Agency) has petitioned this court under section 41 of the Environmental Protection Act (the Act) (Ill. Rev. Stat. 1989, ch. 111½, par. 1041) to obtain judicial review of an order of the Illinois Pollution Control Board (the Board) which held that John Vander had not violated the Act's prohibitions against "caus[ing] or allow[ing] the open dumping of any waste in a manner which results in *** litter [or] open burning" at the dump site (Ill. Rev. Stat. 1989, ch. 111½, pars. 1021(q)(1), (q)(3)). As grounds for its petition, the Agency argues that the Board's order cannot stand because it is based on an erroneous interpretation of what constitutes "open dumping" within the meaning of the Act. We agree. We therefore reverse and remand.

The facts of this case are not in dispute. John Vander had a contract with Southern Illinois Asphalt Company to remove eight buildings from the right-of-way of a new road which Southern Illinois Asphalt was building for the Illinois Department of Transportation. After demolishing two of the buildings, Vander set fire to the debris on the site where the buildings had stood. The fires were observed by Charles Hayduk, a field inspector for the Agency. Thereafter, the Agency issued an administrative citation against Vander pursuant to section 31.1 of the Act (Ill. Rev. Stat. 1989, ch. 111½, par. 1031.1) which charged him with having caused or allowed the open dumping of waste in a manner which resulted in litter and open burning at the dump site in violation of sections 21(q)(1) and 21(q)(3) of the Act (Ill. Rev. Stat. 1989, ch. 111½, pars. 1021(q)(1), (q)(3)).

Based on these violations, the Agency asked the Board to impose a civil penalty on Vander of $1,000. (See Ill. Rev. Stat. 1989, ch. 111½, par. 1042(b)(4).) Vander then filed a petition for review before the Board to contest the administrative citation. A hearing on that petition was conducted on May 10, 1990. At the hearing, Vander did not deny setting fire to the debris, nor did he deny knowing that open burning was unlawful. Indeed, he admitted that he had previously been the subject of another administrative citation for open burning and had paid the statutory civil penalty. However, he thought that burning the buildings was acceptable in this case because Terry Mandrell of Southern Illinois Asphalt had told him that the Illinois Department of Transportation had said that burning the buildings would be permissible. Mandrell himself appeared as a witness at the hearing and confirmed Vander's story.

Following the hearing, the Board ruled that Vander had not violated sections 21(q)(1) and (q)(3) of the Act (Ill. Rev. Stat. 1989, ch. 111½, pars. 1021(q)(1), (q)(3)). It reached this conclusion not because of the defense advanced by Vander, but because it believed Vander's conduct did not fall within the Act's definition of "open dumping" (Ill. Rev. Stat. 1989, ch. 111½, par. 1003.24). In the Board's view:

> "Vander merely tore down the remains of two buildings and burned the demolition debris on site at the point where the buildings once stood. *** The record indicates that the demolition, scooping up of the remaining debris and burning took place as one continuous sequence of events. Where a person is involved in the continuous process of demolition, the Board is unwilling to construe the Act so that the demolition debris instantaneously results in an open dumping violation."

Three of the Board's seven members dissented. The Agency then filed a motion to reconsider, which was denied in an order adopted by a vote of five to two on October 25, 1990. The Agency then commenced this petition for administrative review as authorized by section 41 of the Act (Ill. Rev. Stat. 1989, ch. 111½, par. 1041).

In this proceeding, the Board's findings of fact are not in dispute. The sole question before us is whether the Board was correct in concluding that Vander's conduct did not constitute a violation of section 21(q) of the Act (Ill. Rev. Stat. 1989, ch. 111½, par. 1021(q)). As we have just indicated, the Board based its conclusion solely on the proposition that Vander's conduct could not be regarded as "open dumping" within the meaning of the Act. Thus, this case ultimately turns on a question of statutory construction. The principles governing statutory construction in the context of administrative review proceedings were recently discussed by our supreme court in *Carson Pirie Scott & Co. v. Department of Employment Security* (1989), 131 Ill. 2d 23, 544 N.E.2d 772. The court there held:

> "[T]he fundamental principle of statutory construction is to give effect to the intent of the legislature. [Citation.] Courts should first look to the statutory language as the best indication of the intent of the drafters. [Citations.] Although it is generally recognized that courts will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute, agency interpretations are not binding on the courts [citation], and agency action that is inconsistent with the statute or regulations must be overturned [citations]. For these reasons, we are not bound by the [administrative agency's]

view of [the statute], and exercise independent review." 131 Ill. 2d at 34, 544 N.E.2d at 777.

Under these standards, the Board's decision cannot be sustained. "Open dumping" is defined by the Act as "the consolidation of refuse from one or more sources at a disposal site that does not fulfill the requirements of a sanitary landfill." (Ill. Rev. Stat. 1989, ch. 111½, par. 1003.24.) "Refuse" is the same thing as "waste" (Ill. Rev. Stat. 1989, ch. 111½, par. 1003.31), which is "any garbage *** or other discarded material, including solid, liquid, semi-solid, or contained gaseous material resulting from industrial, commercial, mining and agricultural operations, and from community activities." (Ill. Rev. Stat. 1989, ch. 111½, par. 1003.53.) The demolition debris generated by Vander certainly meets this definition. The waste was consolidated by Vander from at least one source, and it was so consolidated at a "waste disposal site," which the Act defines simply as a "site on which solid waste is disposed." (Ill. Rev. Stat. 1989, ch. 111½, par. 1003.54.) Moreover, there is no dispute that this disposal site did not constitute a "sanitary landfill," which is statutorily defined as "a facility permitted by the Agency for the disposal of waste on land meeting the requirements of the Resource Conservation and Recovery Act." Ill. Rev. Stat. 1989, ch. 111½, par. 1003.41.

The Board attempted to avoid the clear effect of this statutory language by arguing that the Act was not meant to apply where "the demolition, scooping up of the remaining debris and burning took place as one continuous sequence of events." There is no authority for this limitation in the Act or anywhere else. It has been devised by the Board entirely on its own. This was improper. A State agency cannot impose by regulation or practice requirements inconsistent with the statute conferring authority on it (*Hernandez v. Fahner* (1985), 135 Ill. App. 3d 372, 381-82, 481 N.E.2d 1004, 1011), nor may it put into a statute a limitation which the legislature did not prescribe. See *Gray Panthers v. Department of Insurance* (1982), 110 Ill. App. 3d 971, 973, 443 N.E.2d 615, 617.

In ruling as it did, the Board was evidently concerned that unless some qualification were placed on the statute, every contractor engaged in the business of building demolition would automatically run afoul of the Act as soon as he knocked a building down. This concern is based on an incorrect reading of the Act's terms. It assumes that "open dumping" occurs every time refuse is consolidated at a demolition site. But that is not what the statute provides. Under the Act, "open dumping" happens not when refuse is consolidated at the point of demolition, but when it is consolidated at a *disposal* site that does

not fulfill sanitary landfill requirements. Ill. Rev. Stat. 1989, ch. 111½, par. 1003.24.

Thus, there must be more than demolition. There must also be "disposal," which is defined as

> "the discharge, deposit, injection, dumping, spilling, leaking or placing of any waste *** into or on any land or water *** so that such waste *** may enter the environment or be emitted into the air or discharged into any waters, including ground waters." (Ill. Rev. Stat. 1989, ch. 111½, par. 1003.08.)

Accordingly, if buildings are demolished and the resulting waste is cleared away to another location before it is allowed to be dissipated back into the environment or emitted into the air, or discharged into the water, the demolition site cannot be regarded as the "disposal site," and the prohibition against open dumping will not be triggered. But that was not the case here. Here, the demolition site became the disposal site when Vander decided to incinerate the debris there instead of moving it away. The Board was therefore incorrect in concluding that Vander had not engaged in "open dumping."

For the foregoing reasons, the decision of the Board is reversed, and this case is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

CHAPMAN and GOLDENHERSH, JJ., concur.