SECOND DIVISION
DATE: December 26, 2007

No. 1-07-0112

| | | |
|---|---|---|
| SMRJ, INC., d/b/a Four Boys Labor Service, | ) | APPEAL FROM THE |
| | ) | CIRCUIT COURT OF |
| Plaintiff-Appellant, | ) | COOK COUNTY |
| | ) | |
| v. | ) | |
| | ) | |
| BRENDA RUSSELL, Director of the Illinois | ) | |
| Department of Employment Security, and | ) | No. 05 L 50885 |
| THE ILLINOIS DEPARTMENT OF | ) | |
| EMPLOYMENT SECURITY, and | ) | |
| Administrative Agency of the State of | ) | |
| Illinois, and JOSEPH NUNES, the Director | ) | |
| of the Illinois Department of Employment | ) | |
| Security's Representative, | ) | THE HONORABLE |
| | ) | ALEXANDER P. WHITE, |
| Defendants-Appellees. | ) | JUDGE PRESIDING. |

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, SMRJ, Inc., d/b/a Four Boys Labor Service (SMRJ), appeals from an order of the circuit court affirming a final administrative decision issued by the Director of the Illinois Department of Employment Security (the Director). Following an audit of SMRJ's unemployment insurance contributions for 1999, the Director found that 1,350 workers who performed services pursuant to referrals by SMRJ were employees rather than independent contractors. The Director also found that SMRJ was liable for a total of $95,159.16, including $58,264.41 in unpaid unemployment insurance contributions, plus $36,894.75 in statutory interest.

On appeal, SMRJ contends that (1) it was denied due process and a fair hearing because the Director's representative who conducted the administrative hearing was biased against its interests, (2) it was not the employer of the subject workers, (3) its payments to the subject workers were not

wages, (4) the subject workers were independent contractors and were exempt from coverage pursuant to section 212 of the Unemployment Insurance Act (the Act) (820 ILCS 405/212 (West 1998)), (5) the doctrine of equitable estoppel precluded the Department from enforcing its determination and assessment and from collecting statutory interest on the unpaid contributions, and (6) the circuit court erred in entering a monetary judgment and miscalculated the amount of statutory interest owed. For the reasons that follow, we affirm.

Following an audit conducted in 2001, the Department issued a determination and assessment finding that SMRJ had failed to pay $58,264.41 in unemployment insurance trust fund contributions for 1999 and that it was liable for $26,744.95 in statutory interest. SMRJ filed a protest and petition for hearing, contending that the auditor had classified many individuals as SMRJ employees when they should have been classified as independent contractors, whose wages should not have been counted against SMRJ. An administrative hearing was conducted by the Director's representative, Joseph Nunes.

At the hearing, SMRJ called two witnesses. Bogdan Dobrzynski, the Department field auditor who performed the 2001 audit, testified exclusively about the circumstances of the exit interview performed at the conclusion of the audit. Louis Adler, SMRJ's accountant, testified regarding the company's business practices and treatment of the workers that were the subject of the audit. None of the four brothers who owned SMRJ testified, nor did any of the 1,350 workers whose status was at issue.

Adler testified that he was employed by an independent accounting firm and had performed accounting services for SMRJ since 1990. He stated that SMRJ referred workers to companies that

advised SMRJ that they were in need of laborers. According to Adler, SMRJ was neither an employment agency nor a temporary employment agency, although he did not know whether it had a license to operate as a temporary employment agency. When workers came to SMRJ, they completed and signed a document prepared by SMRJ and entitled "Application for Eligibility Verification."

The "Application for Eligibility Verification" included spaces for the worker to provide basic information, such as his or her name, address, date of birth, and social security number. Below that, it had spaces to fill in the name of an authorized SMRJ representative and for the worker to sign and date the form. The document also stated as follows:

"By signing this agreement, I hereby attest that the information [I] am providing with this statement (Photocopies on back) is accurate and true. I certify, under penalties of perjury, that my taxpayer identification number is correctly shown above. I certify that I am not subject to withholding.

I also agree that I will be treated as an Independent Contractor and that all financial responsibilities (Federal and State taxes) will rest upon me.

I also understand that there will be a service fee taken out of pay each and every time I work.

I also understand that I will receive no fringe benefits and I will also be paid a certain fee for the services I render depending on the amount of hours that I will work at the discretion of the company I will work at, not FOUR BOYS LABOR SERVICE."

3

Adler testified that the service fee mentioned in this agreement was a referral fee collected by SMRJ. He further stated that SMRJ exercised no control over the workers it referred and had no relationship with the workers. The workers were free to choose whether they would perform services pursuant to a referral, and any necessary materials, supplies, tools or equipment were given to the worker by the referred company. Although the workers received their pay from SMRJ, they were not provided paid vacations or sick leave, pension benefits, or bonuses.

According to Adler, SMRJ knew nothing about the individuals they referred, other than the basic information on the "Application for Eligibility Verification" form, and he was not sure whether SMRJ maintained a file for each worker. Adler stated that, when a worker came in seeking work, SMRJ would give that person a choice of several companies he or she could work for, and it was up to the worker to decide whether to pursue working for any of those companies. When the Director's representative asked how SMRJ became aware that companies needed workers, Adler said that there were some companies that were always looking for workers. In response to an inquiry about what types of companies were involved in these referrals, Adler mentioned manufacturing companies, chemical companies, and iron companies. Adler specified only machine operators and fork-lift operators as examples of jobs for which SMRJ provided referrals.

When asked how SMRJ knew that a worker had accepted work pursuant to a referral, Adler stated that the client company sent a report to SMRJ, but he was unable to provide specific information about the contents of such reports. Adler said, "I guess it contains the name of the person and the amount of time that they worked." He also stated that the report might be sent daily

or weekly, depending on how much time the individual performed services for the company. When asked if the report included the number of hours the person had worked, Adler responded, "I guess."

The Director's representative inquired about whether the report contained the hourly amount that the person had earned, and Adler responded, "I don't think so." When asked how SMRJ knew what to pay each worker, Adler initially answered that SMRJ was advised in the report of the rate that had been determined by the client company. He later testified, however, that he did not know whether the report contained the worker's hourly rate of pay. The Director's representative asked what other information the report contained, but Adler said that he did not know. Upon further questioning, Adler stated that he did not know whether the report contained the worker's name and social security number.

Adler further testified that he did not know how much of each worker's pay SMRJ received as a referral fee, and he was unsure whether SMRJ's fee was based on a percentage of the worker's wages. According to Adler, the client company determined the rate of pay for each worker referred by SMRJ. Yet, he did not know how a client company became aware that SMRJ had referred the worker. Adler stated that SMRJ did not have any contracts with the client companies to which workers were referred. He testified that SMRJ did not receive any payment from a client company that permanently hired a worker that had been referred by SMRJ. According to Adler, if a company complained about a worker that SMRJ referred, that worker would not be sent to the same company again.

Adler also testified about a conversation that he had in 1993 with Mary Ellen Voigt, a Department auditor who performed an audit that year. According to Adler, Voigt stated during the

audit that she was very pleased that the company was able to refer so many people to companies so they could be kept off the unemployment roles. The hearing was then adjourned so that an effort could be made to find Voigt due to the hearsay nature of Adler's testimony about this conversation.

The hearing was resumed after it was determined that Voigt could not be located. Adler again stated that Voigt had told him during the exit interview for the 1993 audit that the company was doing a very good job of keeping workers off the unemployment roles by finding them employment through the referral service. According to Adler, Voigt also said that she did not find any discrepancy in the procedures that SMRJ had followed, and he relayed this information to his client.

Adler further stated testified that the 1999 unemployment insurance claim of a worker named Melvin Riddles had been denied on the basis that Riddles was not an employee of SMRJ. According to Adler, Riddles' claim for unemployment benefits had triggered the Department's audit of SMRJ for 1999.

The Director's representative issued a recommended decision, stating that the determination and assessment should be upheld with an assessment of statutory interest. SMRJ filed exceptions to the recommended decision, asserting, inter alia, that the Director's representative was biased. On August 18, 2005, the Director issued her decision upholding the determination and assessment.

The Director rejected the argument that the workers were employees of its client companies, rather than of SMRJ. In reaching this conclusion, the Director particularly noted that SMRJ supplied workers upon requests from its clients, who paid SMRJ directly. The Director also noted that SMRJ apprised itself of the number of hours worked by each worker and then paid the individual workers after collecting its fee, which was based on a percentage of the workers' wages.

6

The Director next found that SMRJ had not shown that the workers were independent contractors and, therefore, exempt under section 212 of the Act (820 ILCS 405/212 (West 1998)). Specifically, the Director determined that SMRJ had not shown a lack of control and direction over the subject workers, as required by section 212A (820 ILCS 405/212A (West 1998)) and failed to sustain its burden under section 212B, which mandates that the worker provide services outside the usual course of the employing unit's business or outside of all of the employing unit's places of business (820 ILCS 405/212B (West 1998)).

In addition, the Director determined that SMRJ had failed to satisfy section 212C, which mandates that the workers be engaged in independently established trades, occupations, professions, or businesses. In reaching this conclusion, the Director considered the factors set forth in the applicable Department regulation (56 Ill. Admin. Code § 2732.200(e)) and found that the subject workers had no proprietary interest in any independent business but were totally dependent upon SMRJ to obtain work with SMRJ's client companies. In the absence of evidence that the individual workers performed services for other business entities, the Director determined that the workers did not have interests in businesses that were not subject to cancellation or destruction upon severance of the relationship with SMRJ. The Director noted that the record contained no evidence that any of the subject workers had a shop or office of his or her own, advertised or provided services to the public at large, maintained a business listing in a telephone directory or trade journal, had an investment in any capital goods which could have been used in operating a business enterprise, or gained the profits and bore the losses of a business enterprise. Based on the evidence contained in the record, the Director found that none of the subject workers were independently established in a

business and that SMRJ had failed to meet its burden of proof under section 212C (820 ILCS 405/212C (West 1998)).

Finally, the Director rejected SMRJ's contention that statutory interest under section 1401 of the Act should be waived under the doctrine of equitable estoppel based on statements made by Voigt during the 1993 audit. The Director noted that Adler's testimony concerning these statements had no evidentiary value because it was hearsay. Furthermore, the Director observed that Voigt's statement that SMRJ was performing a good deed by helping the workers gain employment could be true, regardless of whether the workers were classified as employees or independent contractors under section 212 of the Act. The Director found that Voigt's remarks did not induce SMRJ to change its treatment of the subject workers so that it incurred a greater liability for contributions and interest. To the contrary, the record clearly established that SMRJ classified the subject workers as independent contractors both before and after Voigt allegedly made these remarks.

SMRJ subsequently sought judicial review of the Director's decision. The complaint for administrative review included a due process claim, based on allegations that Nunes was found to have been biased in an unrelated case. The complaint also asserted that the Department should be equitably estopped from collecting statutory interest on the unpaid contributions. Following briefing and arguments, the circuit court affirmed the Director's final administrative decision on the merits and rejected SMRJ's due process and estoppel arguments.

The Director then filed a motion for reconsideration, requesting that the court to grant additional relief under section 3-111(a)(8) of the Administrative Review Law (735 ILCS 5/3-111(a)(8) (West 2006)) by entering a judgment of $95,159.16, representing the amount due from

No. 1-07-0112

SMRJ, including statutory interest. Over SMRJ's objection, the circuit court entered judgment in that amount against SMRJ. This appeal followed.

On appeal, SMRJ argues that it was deprived of the right to due process during the administrative hearing because the Director's representative was biased against its interests. We find this argument unpersuasive.

It is firmly established that concepts of due process apply to both courts and administrative agencies that perform adjudicatory functions. Girot v. Keith, 212 Ill. 2d 372, 380, 818 N.E.2d 1232 (2004); Arvia v. Madigan, 209 Ill. 2d 520, 540, 809 N.E.2d 88 (2004). The requirements of due process in judicial proceedings differ from those administrative proceedings, which are simpler and less formal and technical. Daniels v. Police Board, 338 Ill. App. 3d 851, 860, 789 N.E.2d 424 (2003). Due process in an administrative proceeding is satisfied by a " 'procedure that is suitable and proper to the nature of the determination to be made and conforms to fundamental principles of justice.' " Comito v. Police Board, 317 Ill. App. 3d 677, 687, 739 N.E.2d 942 (2000), quoting Telcser v. Holzman, 31 Ill. 2d 332, 339, 201 N.E.2d 370 (1964). That procedure must include the opportunity to be heard, the right to cross-examine adverse witnesses, and impartial rulings on the evidence. Abrahamson v. Illinois Dep't of Professional Regulation, 153 Ill. 2d 76, 95, 606 N.E.2d 1111 (1992). Also, as in judicial proceedings, due process requires that administrative proceedings be adjudicated by an impartial tribunal. Girot, 212 Ill. 2d at 380; Collura v. Board of Police Commissioners, 113 Ill. 2d 361, 369, 498 N.E.2d 1148 (1986).

Yet, " '[a] mere possibility of prejudice is insufficient to show that an administrative decision maker was biased.' " Daniels, 338 Ill. App. 3d at 862, quoting Collura, 113 Ill. 2d at 370. In the

9

absence of a showing to the contrary, state administrators are assumed to be individuals of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances. Arvia, 209 Ill. 2d at 541; Abrahamson, 153 Ill.2d at 95. Thus, " '[t]o prove bias, the plaintiff must overcome a presumption of honesty by showing in the record that the administrative proceedings were either tainted by dishonesty or contained an unacceptable risk of bias.' " Girot, 212 Ill. 2d at 380-81, quoting Huff v. Rock Island County Sheriff's Merit Comm'n, 294 Ill. App. 3d 477, 481, 689 N.E.2d 1159 (1998).

Here, the record does not support SMRJ's contention that the Director's representative was biased against its interests. To the contrary, the report of proceedings reflects that Nunes allowed SMRJ to introduce any evidence that it wished to present. Indeed, Nunes continued the hearing so an effort could be made to locate Voigt and determine whether she would be available to testify regarding her findings and comments about the previous audit. In addition, when it was determined that Voigt could not be located, Nunes permitted SMRJ to present Adler's testimony regarding his recollection of Voigt's comments. Also, SMRJ's reference to a prior, unrelated case in which the Director and the reviewing court found that Nunes had failed to conduct the hearing impartially does not establish that he was biased in this case. There is no indication in the record that the hearing conducted in the prior case had any connection to or impact on the hearing in this case.

We will not presume that the Director's representative was biased, and the record does not reflect that SMRJ was denied the right to a hearing before a neutral tribunal. Accordingly, we reject SMRJ's unsubstantiated claim that it was deprived of due process.

10

We next address SMRJ's challenge of the Director's decision that it was liable for unemployment insurance contributions based on the services performed by the subject workers. The determination of whether workers are employees or independent contractors under the Act involves a mixed question of law and fact. Carpetland U.S.A., Inc. v. Illinois Dep't of Employment Security, 201 Ill. 2d 351, 369, 776 N.E.2d 166 (2002); AFM Messenger Service, Inc. v. Dep't of Employment Security, 198 Ill. 2d 380, 392, 763 N.E.2d 272 (2001). Consequently, the Director's decision in this case will be set aside only if it is clearly erroneous. See Carpetland U.S.A., Inc., 201 Ill. 2d at 369; AFM Messenger Service, Inc., 198 Ill. 2d at 391-92. In reviewing a mixed question, the administrative agency's decision must be accepted unless the court is " 'left with the definite and firm conviction that a mistake has been committed.' " AFM Messenger Service, Inc., 198 Ill. 2d at 393, quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 2d 746 (1948).

SMRJ contends that it was not the employer of the subject workers because it merely referred the workers to its client companies. We disagree.

Section 206 of the Act provides that "employment" includes "all services performed by an individual for an employing unit." 820 ILCS 405/206 (West 1998); Jack Bradley, Inc. v. Dep't of Employment Security, 146 Ill. 2d 61, 74, 585 N.E.2d 123 (1991). An "employing unit" is defined to include a corporation "which has or * * * had in its employ one or more individuals performing services for it within this State." 820 ILCS 405/204 (West 1998). Also, "wages" are "every form of remuneration for personal services, including salaries, commissions, and bonuses." 820 ILCS 405/234 (West 1998).

The evidence adduced at the administrative hearing established that when workers came to SMRJ, they completed and signed a document prepared by SMRJ and entitled "Application for Eligibility Verification." After a worker performed services pursuant to a referral by SMRJ, the client company provided SMRJ with a report indicating the name of the individual worker and the number of hours worked. The client companies reported the hours worked by each individual and paid SMRJ directly for those services. SMRJ then compensated the individual workers after it collected its fees. These circumstances demonstrate that the services performed by the subject workers benefitted SMRJ and properly were considered "employment" under the Act. See Jack Bradley, Inc., 146 Ill. 2d at 76.

SMRJ also claims that, even if it was the employer of the subject workers, it was not obligated to pay unemployment insurance contributions on their wages because they were exempt under section 212 of the Act. Again, we disagree.

The purpose of the Act is to provide economic relief to those who are involuntarily unemployed, through the collection of compulsory contributions from employers and the payment of benefits to eligible unemployed persons. 820 ILCS 405/100 (West 2006); Carson Pirie Scott & Co. v. Dep't of Employment Security, 131 Ill. 2d 23, 28, 544 N.E.2d 772 (1989). Under the Act, liability for contributions and eligibility for benefits is dependent, in part, on the existence of an "employment" relationship. AFM Messenger Service, Inc., 198 Ill. 2d at 396. The determination of whether such an employment relationship exists is not controlled by common law principles of master and servant and independent contractor. AFM Messenger Service, Inc., 198 Ill. 2d at 396. Instead, courts are required to consider the statutory definitions, which are more inclusive than the common law. AFM Messenger Service, Inc., 198 Ill. 2d at 396; Jack Bradley, Inc., 146 Ill.2d at 74.

12

Where services are performed by independent contractors, an exception to the expansive definition of "employment" is created by section 212 of the Act. 820 ILCS 405/212 (West 1998); AFM Messenger Service, Inc., 198 Ill. 2d at 397. That section provides as follows:

"Service performed by an individual for an employing unit, whether or not such individual employs others in connection with the performance of such services, shall be deemed to be employment unless and until it is proven in any proceeding where such issue is involved that-

A. Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

B. Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

C. Such individual is engaged in an independently established trade, occupation, profession, or business." 820 ILCS 405/212 (West 1998).

The three conditions set forth in section 212 are phrased in the conjunctive, and all three conditions must be satisfied for the independent-contractor exemption to apply. AFM Messenger Service, Inc., 198 Ill. 2d at 397; Jack Bradley, Inc., 146 Ill.2d at 75. In determining whether exemption applies, the terminology used by the parties to describe their relationship is not controlling, and the party claiming the exemption bears a strict burden of proof. AFM Messenger Service, Inc., 198 Ill. 2d at 397-98; Jack Bradley, Inc., 146 Ill.2d at 75-76. Also, because the Act was passed with

the public welfare in mind, its provisions are to be liberally construed in favor of inclusion. AFM Messenger Service, Inc., 198 Ill. 2d at 398; Jack Bradley, Inc., 146 Ill.2d at 75.

In this case, the Director found that SMRJ had failed to meet its burden as to all three conditions of section 212. Because the inability to satisfy any one condition will defeat an employer's claim for an independent-contractor exemption, it is not necessary for us to consider whether all three conditions have been satisfied. See AFM Messenger Service, Inc., 198 Ill. 2d at 398; Griffitts Construction Co. v. Dep't of Labor, 76 Ill. 2d 99, 105, 390 N.E.2d 333 (1979). Rather, we need only address the third condition, which requires that the subject workers be "engaged in an independently established trade, occupation, profession, or business." See AFM Messenger Service, Inc., 198 Ill. 2d at 398; 820 ILCS 405/212(C) (West 1998).

Section 212C " 'contemplates that one who is engaged in an independent enterprise is an individual who has a proprietary interest in such business to the extent that he can operate [the] same without hindrance from any individual whatsoever and whose business also is free from control.' " Jack Bradley, Inc., 146 Ill. 2d at 77, quoting Murphy v. Daumit, 387 Ill. 406, 417, 56 N.E.2d 800 (1944). "Thus, '[t]he ultimate issue is whether the person performing the services was engaged in an entrepreneurial enterprise which enjoyed a degree of economic independence such that the enterprise could survive any relationship with the particular person contracting for services.' " Jack Bradley, Inc., 146 Ill. 2d at 78, quoting with approval Sample & Sell, Inc. v. Labor & Industrial Relations Comm'n, 764 S.W.2d 109, 112 (Mo. App. 1988); see also AFM Messenger Service, Inc., 198 Ill. 2d at 401; Murphy, 387 Ill. at 417. Where workers are not capable of providing their services without dependence upon another entity, they will not be considered to have met the statutory

requirement set forth in section 212C.  Jack Bradley, Inc., 146 Ill.2d at 78.  Moreover, the fact that an individual may also perform services for other companies does not necessarily establish that the individual is an independent contractor under section 212C.  Jack Bradley, Inc., 146 Ill. 2d at 80; Ross v. Cummins, 7 Ill. 2d 595, 601, 131 N.E.2d 521.  The focus of the relevant inquiry is whether the individual workers had businesses or occupations which were capable of operation independent of a relationship with employing unit.  See Jack Bradley, Inc., 146 Ill. 2d at 80; Legal Process Service, Inc. v. Ward, 165 Ill. App. 3d 83, 89, 518 N.E.2d 768  (1988).

In addition, section 2732.200(e) of the Department's regulations provides 13 factors to be considered in determining whether an individual is an independent contractor under section 212C of the Act.  See 56 Ill. Admin. Code § 2732.200(e).  No single factor will determine if an individual is engaged in an independently established trade, occupation, profession or business, and the business reality or totality of circumstances will determine the existence of this condition.  56 Ill. Admin. Code § 2732.200(e).

SMRJ correctly asserts that several of these factors apply to the subject workers.  For instance, they were responsible for their own taxes; they performed services for SMRJ under their own names; SMRJ did not represent the subject workers as employees to its customers; and the subject workers had the right to perform similar services for other companies when they chose.  See 56 Ill. Admin. Code § 2732.200(e)(5), (6), (8), (11).  Although these factors suggest a certain measure of independence in employment, they are not sufficient to establish that the subject workers were independent contractors.

15

No. 1-07-0112

The Director determined that many of the factors set forth in the regulation indicated that the subject workers were not independent contractors. In particular, there was no evidence that the individual workers had an interest in an independent business that is not subject to cancellation or destruction upon severance of the relationship. See 56 Ill. Admin. Code § 2732.200(e)(1). Nor did the record establish that the workers had an investment of capital, owned capital goods, or gained the profits and bore the losses of a business enterprise. See 56 Ill. Admin. Code § 2732.200(e)(2), (3). Though Adler testified that the subject workers were free to make their services available to the general public, there was no evidence that they had done so. See 56 Ill. Admin. Code § 2732.200(e)(4). Also, there was no evidence that the workers had shops or offices of their own or maintained business listings in the telephone directory or in trade journals. See 56 Ill. Admin. Code § 2732.200(e)(7), (12).

Furthermore, the Director found that the subject workers had no ability to negotiate the fee charged by SMRJ, and their employment was dependent on SMRJ. The workers could not seek employment directly from the client companies and had to be referred by SMRJ. SMRJ provided the written contract signed by each individual worker prior to the initial referral, and the workers did not sign successive agreements each time a referral was made. In addition, SMRJ failed to present any evidence that the subject workers had proprietary interests in their own businesses that they were able to operate on their own, without the benefit of a relationship with SMRJ or another referral company. See Jack Bradley, Inc., 146 Ill. 2d at 80-81.

Based upon the record presented, we conclude that SMRJ failed to carry its strict burden of proof in demonstrating that the subject workers were engaged in independently established

16

occupations or businesses. Consequently, the Director's decision that the requirements of section 212C had not been satisfied was not clearly erroneous.

We next address SMRJ's argument that, under the doctrine of equitable estoppel, the Department should be precluded from enforcing its determination and assessment. We note that this argument was not raised during the administrative proceedings before the Director or the Director's representative. Consequently, it has been forfeited on appeal. See Texaco-Cities Service Pipeline Co. v. McGaw, 182 Ill. 2d 262, 278, 695 N.E.2d 481 (1998) (noting that issues not raised before the administrative agency are forfeited on administrative review).

SMRJ also claims that the Department should be estopped from collecting statutory interest on the unpaid contributions because its classification of the subject workers as independent contractors had been approved in a previous audit. We reject this claim.

Equitable estoppel is applied against the State only when some positive acts by State officials may have induced an action by the adverse party under circumstances where it would be inequitable to hold the adverse party liable for the act so induced. Jack Bradley, Inc., 146 Ill. 2d at 81; Hickey v. Illinois Central R.R. Co., 35 Ill. 2d 427, 448-49, 220 N.E.2d 415 (1966). The doctrine will be invoked only in compelling or extraordinary circumstances where it is necessary to prevent fraud and injustice. Brown's Furniture v. Wagner, 171 Ill. 2d 410, 431, 665 N.E.2d 795 (1996); Jack Bradley, Inc., 146 Ill. 2d at 81; Rockford Life Insurance Co. v. Dep't of Revenue, 112 Ill. 2d 174, 185, 492 N.E.2d 1278 (1986); Austin Liquor Mart, Inc. v. Dep't of Revenue, 51 Ill. 2d 1, 6, 280 N.E.2d 437 (1972). This is especially true when public revenues are involved. Jack Bradley, Inc., 146 Ill. 2d at 81; Rockford Life Insurance Co., 112 Ill. 2d at 185-86. Moreover, the State is not estopped by the

mistakes or misinformation given by State employees with respect to tax liabilities or by the prior acts or conduct of its agents regarding the determination of tax liabilities or failure to collect a tax. See Brown's Furniture, 171 Ill. 2d at 432; Austin Liquor Mart, Inc., 51 Ill. 2d at 5; Saco Industries, Inc. v. Illinois Dep't of Revenue, 301 Ill. App.3d 191, 197, 702 N.E.2d 1012 (1998). The fact that a company's classification of workers as independent contractors has been approved in a prior Department audit is insufficient to warrant the application of equitable estoppel. Jack Bradley, Inc., 146 Ill. 2d at 81-82.

In this case, the Department is not estopped based on its prior determination that SMRJ's workers were independent contractors, rendered in the 1993 audit conducted by Voigt. In addition, the record does not demonstrate that Department officials engaged in any positive acts that caused SMRJ to alter its conduct or procedures in a manner that increased its existing liability for unemployment contributions. SMRJ presented no evidence that, as a result of the prior audit, it was induced to change its classification of the subject workers or vary its policies in any way. Moreover, the facts of this case do not present any compelling or extraordinary circumstances that would require application of the application of equitable estoppel. Absent fraud or injustice, the Department is not estopped from imposing statutory interest on SMRJ's unpaid contributions, as provided in section 1401 of the Act (820 ILCS 405/1401 (West 1998)). See Brown's Furniture, 171 Ill. 2d at 431.

In further support of its argument that the statutory interest should be waived, SMRJ relies on section 2765.65 of the Department's administrative regulations, which states, in relevant part, as follows:

"a) The Director is authorized to waive the payment of all or part of any interest or penalty upon proposed application and showing of good cause that consists of any or all of the following:

* * *

3) Where the Agency, in its written communication or through a specifically identified employee in oral communication directed to a specific employer account has affirmatively misled the employer as to its duties and obligations such that the charging of interest to the employer would violate the principle of equitable estoppel."

56 Ill. Admin. Code § 2765.65(a)(3).

SMRJ contends that statements made by Voigt during the previous audit in 1993 constituted an oral communication that affirmatively misled it as to its duties and obligations. Initially, we observe that a waiver of statutory interest under the Department's regulation is not mandatory, but rests within the discretion of the Director. 56 Ill. Admin. Code § 2765.65(a); see also Itasca Public School Dist. No. 10 v. Ward, 179 Ill. App.3d 920, 925, 535 N.E.2d 3 (1989). In addition, we find that Voigt's remarks do not satisfy the conditions set forth in the regulation.

According to Adler, during the exit interview for the previous audit, Voigt stated that the company was doing a very good job of keeping workers off the unemployment roles by finding them employment through the referral service. On its face, this remark does not constitute a finding that the subject workers were properly classified as independent contractors. Rather, Voigt's comment merely reflects a personal opinion that SMRJ was providing a valuable social service in keeping workers employed. As the Director found, Voigt's personal opinion could be true whether the

subject workers were employees or independent contractors. Similarly, Voigt's statement that she found no discrepancy in the company's procedures constitutes nothing more than an expression of the result of the audit, which we have already held does not warrant the application of estoppel. See Brown's Furniture, 171 Ill. 2d at 432; Jack Bradley, Inc., 146 Ill. 2d at 81-82. Neither of these remarks can be characterized as an oral communication that affirmatively misled SMRJ as to its duties and obligations. Under such circumstances, we cannot say that the Director abused her discretion in refusing to waive SMRJ's interest under section 2765.65(a)(3) of the regulations. 56 Ill. Admin. Code § 2765.65(a)(3).

Finally, we consider SMRJ's contention that the circuit court erred in entering judgment against it for $95,159.16, including $36,894.75 in statutory interest, because the amount of interest exceeded the applicable statutory limit. This issue presents a question of statutory interpretation, which we review de novo. See Carpetland U.S.A., Inc., 201 Ill. 2d at 369; AFM Messenger Service, Inc., 198 Ill. 2d at 395; Branson, 168 Ill. 2d at 254.

Section 2207 of the Act provides, in relevant part, as follows:

"whenever the interest provided for in Section 1401 on contributions in any quarter, has accrued to sixty per cent of the amount of the contributions due from any employing unit for such quarter * * * no action shall be brought, or determination and assessment made, against such employing unit for collection of the interest in excess of said sixty per cent of such contributions." 820 ILCS 405/2207 (West 1998).

The primary rule of statutory construction is to give effect to legislative intent by first looking at the plain meaning of the language. Davis v. Toshiba Machine Co., America, 186 Ill. 2d 181, 184, 710 N.E.2d 399 (1999). "Where the language of a statute is clear and unambiguous, a court must give it effect as written, without 'reading into it exceptions, limitations or conditions that the legislature did not express.'" Garza v. Navistar International Transportation Corp., 172 Ill. 2d 373, 378, 666 N.E.2d 1198 (1996), quoting Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc., 158 Ill. 2d 76, 83, 630 N.E.2d 820 (1994). Courts will first look to the words of the statute because the language used by the legislature is the best indication of legislative intent. Nottage v. Jeka, 172 Ill. 2d 386, 392, 667 N.E.2d 91 (1996). When the language of a statute is clear, resort to other tools of interpretation is not necessary. Henry v. St. John's Hospital, 138 Ill. 2d 533, 541, 563 N.E.2d 410 (1990).

SMRJ asserts that the entry of judgment, which included $36,894.75 in statutory interest, was improper because the amount of interest exceeded 60% of the unpaid contributions as determined by the Director. This assertion is unfounded.

No. 1-07-0112

The clear and unambiguous language of section 2207 states that the limit of 60% interest is calculated based on the amount of contributions due for the relevant period, not on the amount of unpaid contributions. Nothing in the plain language of this provision indicates that the maximum-interest calculation is to be premised on unpaid contributions. Had the legislature intended to base the interest cap on the amount of unpaid contributions, it would have included that term in the language of section 2207. The interpretation advanced by SMRJ would require this court to insert a limitation or condition that the legislature did not express. This we decline to do.

SMRJ also claims that the amount included in the judgment for statutory interest was derived from an incorrect mathematical calculation. This claim is predicated on the erroneous assumption that the 60%-interest cap is based on unpaid contributions. In addition, we find that SMRJ's claim is refuted by the record. The Director's exhibit 5 consists of the complete account history for SMRJ, including the quarterly-detail report for 1999. That report reflects that the contributions due for each of the four quarters in 1999 were $16,947.48, $16,817.83, $15,673.84, and $12,052.10, respectively. Therefore, the total amount of contributions due was $61,491.25, and 60% of that amount is $36,894.75. Consequently, we find no error in the calculation of the amount of statutory interest.

SMRJ next contends that it was improper for the court to enter the judgment for statutory interest because the entry of that judgment would permit the Department to pursue a claim for post-judgment interest in excess of the limitation contained in section 2207. We find that this contention is not supported by the applicable statutory language or by the record.

First, there is no dispute that section 111(a)(8) of the Administrative Review Law permits the circuit court to enter such a judgment. See 735 ILCS 5/3-111(a)(8) (West 2006). Second, the

22

interest limitation contained in section 2207 applies only to actions brought, or determinations and assessments made, for the interest provided for in Section 1401. 820 ILCS 405/2207 (West 1998). As a result, the terms of section 2207 would not apply to post-judgment interest that is authorized by another statutory provision. See 735 ILCS 5/2-1303 (West 2006). Third, there is no indication in the record that the Department had or intended to pursue a claim for post-judgment interest. Accordingly, we reject SMRJ's contention that it was improper for the court to enter a judgment that included $36,894.75 in statutory interest.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

HALL, J., and KARNEZIS, J., concur.