VETERANS MESSENGER SERVICE, INC., Plaintiff-Appellant, v. GERTRUDE W. JORDAN, Director of Employment Security, *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—08—0004

Opinion filed August 3, 2009.—Rehearing denied July 21, 2009.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and John P. Schmidt, Assistant Attorney General, of counsel), for appellant.

Jeffrey A. Risch, of Wessels Sherman, P.C., of St. Charles, and Sean F. Darke, of Wessels Sherman, P.C., of Chicago, for appellees.

JUSTICE GARCIA delivered the opinion of the court:

This appeal arises from an unemployment trust fund contribution assessment by the Director of the Illinois Department of Employment

Security (Department), then Gertrude W. Jordan, against Veterans Messenger Service, Inc. (Veterans), following a 1990 audit concerning the couriers it contracted with. Based on the audit, Director Jordan rejected Veterans' claim that the couriers were independent contractors under section 212 of the Unemployment Insurance Act (the Act) (820 ILCS 405/212 (West 2006)). Director Jordan assessed Veterans $52,043.66 that it should have contributed to the Department's unemployment trust fund. On administrative review, the circuit court affirmed Director Jordan's decision. Veterans timely appeals, contending the Department's 1990 audit violated its due process rights, Director Jordan erroneously concluded that the couriers were not independent contractors, and, even if the couriers were employees, the Department was estopped from recharacterizing the couriers based on an earlier audit, which purportedly found the couriers to be independent contractors. We agree with the Director and affirm.

## BACKGROUND

Veterans is a "delivery brokerage service" located in Bensenville, Illinois. In the late eighties, Veterans' office staff solicited delivery orders from companies throughout the greater Chicago area. Dispatchers relayed orders to the couriers Veterans had contracted with to carry out the delivery orders. Veterans forwarded to the couriers the location of delivery items, the weight of each item, and any other customer requirements. Only the couriers came into physical contact with the delivery items.

The couriers signed a standard contract with Veterans characterizing the couriers as independent contractors. Under the contract, the couriers were only responsible for the delivery results. They controlled the manner of their work. Couriers set their own hours and vacations, were free to reject any deliveries offered by dispatchers, and were free to perform delivery services for "other courier service brokers." The contract set a standard rate for each item delivered. Either party was free to terminate the contract, although the contract required Veterans to pay $100 to any courier it terminated.

The Department first audited Veterans in 1987 to determine the employment status of the couriers: employees or independent contractors. Although the audit apparently concluded in 1987, neither Veterans nor its accountant, Lester Rockoff, received a written report concerning the audit's results. Veterans operated in the same manner before and after the 1987 audit.

In 1990, the Department initiated a second audit of Veterans covering the years 1987, 1988, and the first three quarters of 1989, again inquiring into the employment status of Veterans' couriers. The

Department told Veterans' accountant Rockoff that he should produce any evidence demonstrating that the couriers were independent contractors. Rockoff responded that the Department's 1987 audit properly found the couriers were employed as independent contractors, but provided no other evidence. On January 22, 1991, the Department issued the results of the 1990 audit, finding that the couriers were in fact employees and assessing $79,352.14 plus interest in unpaid contributions. Veterans timely protested, and a hearing was scheduled on August 7, 1992, before Ronald Rodgers, a Department representative of Director Jordan.

At the hearing, Veterans' president William Factor testified that the couriers were not required to report in person to Veterans' place of business. Veterans did not train or supervise the couriers. Factor testified that the couriers owned and maintained their own delivery vehicles, and some of the couriers employed helpers to watch their vehicles while the couriers made deliveries.

Factor admitted that couriers wore patches and identification badges bearing Veterans' name, but added that the identification badges stated that the couriers were independent contractors and listed their "independent contractor number." He testified that the patches and identification badges were required by one of the largest building management companies in the Chicago area, the Building Owner Management Association, for security reasons. Veterans did, however, require the couriers to lease their vehicles to Veterans to comply with the regulations of the Illinois Commerce Commission under which Veterans operated.

Courier Robert Kucera testified that he was the owner of Phoenix Transportation and executed a courier contract with Veterans. Phoenix maintained a business office in Westchester, Illinois. Kucera did not consider himself a Veterans employee, believed he had his own, distinct business reputation and could remain in business without Veterans. Kucera testified that Veterans permitted couriers to negotiate their commissions, although he accepted the commission structure in the standard contract.

On March 4, 1993, Rodgers issued a recommended decision to Director Jordan that Veterans failed to demonstrate that the couriers met the requirements of independent contractors in section 212 of the Act (820 ILCS 405/212 (West 2006)) and, thus, were deemed employees. Rodgers recommended that Veterans be assessed a contribution to the Department's unemployment trust fund in a reduced amount of $52,043.66 because the original amount sought based upon the 1990 audit overstated some of the taxable wages paid to the couriers.

Veterans filed written objections to Rodgers' recommended decision with Director Jordan. On August 9, 1993, Director Jordan adopted

Rodgers' decision and upheld the assessment, rejecting each of Veterans' arguments.

Thereafter, Veterans filed a timely action for administrative review. On September 22, 1998, Judge Alexander P. White entered an agreed order based upon the parties' joint oral motion to remand the case to the Department to consider whether intervening Illinois decisions impacted Director Jordan's decision. Without conducting any additional fact-finding, Director Jordan issued a supplemental decision in January 2003, reaffirming the assessment against Veterans. The administrative review action returned to the circuit court in February 2003. Judge White affirmed Director Jordan's decision in December 2007. This timely appeal followed.

## ANALYSIS

This appeal is before us pursuant to the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2006)). We review the Department's decision, not that of the circuit court. *Odie v. Department of Employment Security*, 377 Ill. App. 3d 710, 713, 881 N.E.2d 358 (2007), citing *Ford Motor Co. v. Motor Vehicle Review Board*, 338 Ill. App. 3d 880, 891, 788 N.E.2d 187 (2003).

### Due Process Claim

■ Veterans first contends that the Department violated its due process rights by failing to interview a single Veterans representative in the course of its 1990 audit. The Department responds that Veterans forfeited this argument by failing to raise it in a written objection to Rodgers' 1993 recommended decision that the couriers did not qualify as independent contractors. In essence, Veterans contends that it did not raise this issue in its written objections to Rodgers' decision because he refused to accept evidence concerning it and, thus, this contention was not addressed at the hearing.

Under section 2725.275 of title 56 of the Illinois Administrative Code, once a Department representative recommends a decision to a Department Director, a party must file written objections to the recommended decision with the Director. 56 Ill. Adm. Code §2725.275(a). A party's failure to file such an objection, "specifically and in detail," with the Director "shall be deemed a waiver of such objection." 56 Ill. Adm. Code §2725.275(b); see also *Moore v. Illinois State Labor Relations Board*, 206 Ill. App. 3d 327, 338-39, 564 N.E.2d 213 (1990) (waiver applied where a party failed to include an issue in their written exceptions to an administrative agent's recommended decision as required under section 1220.60 of title 80 of the Administrative Code).

Veterans' written objections to Rodgers' 1993 recommended decision with Director Jordan made no mention of any due process claim.

This omission constitutes a forfeiture of the issue on administrative review. *Smith v. Department of Professional Regulation*, 202 Ill. App. 3d 279, 287, 559 N.E.2d 884 (1990) ("The waiver rule specifically requires first raising an issue before the administrative tribunal rendering a decision from which an appeal is taken to the courts").

We reject Veterans' claim that it was somehow barred from raising its due process claim in its objections to Rodgers' decision because the 1990 audit had already been concluded. We note that Veterans did file other objections, in writing, to Rodgers' recommended decision. We are presented with no good reason Veterans did not include its due process claim in its written objections. Because the clear and unambiguous language in section 2725.275 requires that a party objecting to a Department representative's recommended decision "set forth specifically and in detail" its objections, we find Veterans' due process claim forfeited. We briefly note that Veterans makes no claim that the hearing conducted before Rodgers, where Veterans presented the testimony of Robert Kucera, was inadequate.

## Employment Status of Veterans' Couriers

Whether a company's workers are employees or independent contractors under section 212 of the Act is a mixed question of law and fact. *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 369, 776 N.E.2d 166 (2002). Where the Department has determined, after an audit and hearing, that a company's workers are employees, not independent contractors, we review the Department's decision under a clearly erroneous standard. *Carpetland*, 201 Ill. 2d at 369. We will reverse only if, "after review of the entire record, we are ' "left with the definite and firm conviction that a mistake has been committed." ' " *Carpetland*, 201 Ill. 2d at 369, quoting *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395, 763 N.E.2d 272 (2001), quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948).

■ Section 212 of the Act permits a company to classify a worker as an independent contractor exempt from contribution requirements when the worker meets three requirements:

"A. Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

B. Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

C. Such individual is engaged in an independently established trade, occupation, profession, or business." 820 ILCS 405/212 (West 2006).

A sufficient showing must be made as to each of the requirements of section 212. The failure to satisfy any one of the requirements as to the couriers involved in this case dooms Veterans' claim. *SMRJ, Inc. v. Russell*, 378 Ill. App. 3d 563, 573-74, 884 N.E.2d 1152 (2007).

Because the record is clearest regarding the third requirement, we limit our review to the Department's determination that Veterans did not demonstrate its couriers were "engaged in an independently established trade, occupation, profession, or business" as required under section 212(C). 820 ILCS 405/212(C) (West 2006).

A worker is engaged in an independent business under section 212(C) of the Act when the worker's "business" is "capable of operation without hindrance from any other individual." *AFM*, 198 Ill. 2d at 400, citing *Jack Bradley, Inc. v. Department of Employment Security*, 146 Ill. 2d 61, 78, 585 N.E.2d 123 (1991). "That is, the employee's entrepreneurial enterprise must enjoy a 'degree of economic independence such that the enterprise could survive any relationship with the particular person contracting for services.' " *AFM*, 198 Ill. 2d at 401, quoting *Jack Bradley*, 146 Ill. 2d at 78. Section 2732.200(e) of title 56 of the Administrative Code provides a nonexclusive list of factors that should be considered in determining whether a worker's business is independent. While pertinent factors should be considered, we look to "the business reality or totality of circumstances" in our bottom-line assessment of whether a worker operates an independent business. 56 Ill. Adm. Code §2732.200(e) (Conway Greene CD-Rom June 2001).

In *AFM*, our supreme court found that delivery drivers, analogous to Veterans' couriers, failed to meet the independent business requirement in section 212(C) and, thus, rejected AFM Messenger Service, Inc.'s contention that its drivers were independent contractors. *AFM*, 198 Ill. 2d at 381-82. Our supreme court noted the variety of ways in which AFM's drivers depended on AFM to sustain their businesses: AFM procured customers and set delivery prices, made delivery assignments, billed customers, set commission rates, paid the drivers, and maintained the right to terminate its relationship with drivers at any time. *AFM*, 198 Ill. 2d at 401. Because that evidence "did not demonstrate that the drivers were able to operate their 'delivery businesses' without the benefit of a relationship with AFM, or another messenger service company like AFM," the drivers did not own independent businesses as required under section 212(C). *AFM*, 198 Ill. 2d at 401. The Department's ruling that the drivers were employees passed review under the clearly erroneous standard. *AFM*, 198 Ill. 2d at 408.

■ In the case before us, no evidence was presented that Veterans' couriers could operate their delivery services without the solicitation of customers by Veterans or another similarly situated "delivery brokerage service." Similar to the observations made by our supreme court in *AFM*, Veterans set delivery prices, made delivery assignments, billed customers, paid drivers, and reserved the right to terminate its relationship with couriers, albeit at a cost of $100. The evidence at the hearing did not demonstrate that the couriers themselves solicited customers. Although Kucera testified that he sought to solicit additional work from customers, his solicitations were not independent of the services provided by Veterans because he had no independent price sheets to offer these customers. Also, Veterans set a standard commission rate in its contracts with couriers, which Kucera admitted he did not negotiate.

Seeking to avoid falling under the holding in *AFM*, Veterans argues that the factors listed in section 2732.200(e) (56 Ill. Adm. Code §2732.200(e) (Conway Greene CD-Rom June 2001)) suggest that its couriers operated independent businesses. We find little in that section to compel us to upset the Director's decision. Section 2732.200(e) emphasizes that our decision should rely on the business reality (56 Ill. Adm. Code §2732.200(e) (Conway Greene CD-Rom June 2001)), which as noted above showed that the couriers relied entirely on their relationship with Veterans to obtain business on their behalf.

While certain factors set forth in section 2732.200(e) tend to favor Veterans' claim—such as their making capital investments in their vehicles, profiting based on their deliveries, filing tax returns as independent businesses, employing "helpers" to watch their vehicles while making deliveries, and reserving the right to perform similar delivery services for others (56 Ill. Adm. Code §§2732.200(e)(2), (e)(3), (e)(5), (e)(9), (e)(11) (Conway Greene CD-Rom June 2001))—several other factors weigh against a finding that the couriers' businesses were independent under the totality of the circumstances—the couriers did not make their businesses available to the general public; they reported no wages of any workers they hired to the Department; they did not maintain business listings in phone directories or trade journals; they made no payments for common carrier authority in their own names. 56 Ill. Adm. Code §§2732.200(e)(4), (e)(10), (e)(12), (e)(13) (Conway Greene CD-Rom June 2001). It was for the Department to weigh these opposing factors in reaching its decision.

Based on the record before us, we cannot say that the Department committed clear error when it decided that the couriers' dependence on a "delivery brokerage service" such as Veterans was inconsistent with the couriers being engaged in independent businesses. *AFM*, 198

Ill. 2d at 401. We affirm its conclusion that Veterans' couriers were employees.

## Estoppel

■ Finally, Veterans contends that even if the couriers were employees, the Department's silence following the 1987 audit led Veterans to believe that the couriers were independent contractors. Based on its reliance on the purported results of the 1987 audit, Veterans contends the Department is estopped from reclassifying the couriers as employees based on the 1990 audit. We disagree.

Estoppel can only be invoked against the State when "some positive acts by State officials" induced a party to take action, making it inequitable to hold that party liable. *SMRJ*, 378 Ill. App. 3d at 576, citing *Jack Bradley*, 146 Ill. 2d at 81. Where public revenue is involved, estoppel will only be invoked "in compelling or extraordinary circumstances where it is necessary to prevent fraud and injustice." *SMRJ*, 378 Ill. App. 3d at 576. Whether estoppel applies to the undisputed facts of this case is a pure question of law; our review is *de novo*. *Carpetland*, 201 Ill. 2d at 369 (when review of an agency's decision involves a pure question of law, review is *de novo*).

In *Jack Bradley*, our supreme court addressed a similar contention that the Department's earlier decision exempting workers from contribution requirements was binding. Jack Bradley, Inc., argued that an alleged decision in 1983 made by a representative of the Department that Jack Bradley, Inc., was not required to make unemployment contributions estopped the Department from issuing a contrary decision in 1986 and 1987 based upon similar workers. *Jack Bradley*, 146 Ill. 2d at 67. As an example of the limited application of the estoppel doctrine to the State, our supreme court noted that estoppel does not apply where the State reexamines a taxpayer's liability even after her return has been approved. *Jack Bradley*, 146 Ill. 2d at 81-82. Because the Department's "new" decision regarding Jack Bradley's workers was no more onerous than a reexamination of a taxpayer's return, estoppel did not apply to the Department's 1986 and 1987 assessments. *Jack Bradley*, 146 Ill. 2d at 82; see also *SMRJ*, 378 Ill. App. 3d at 576 ("The fact that a company's classification of workers as independent contractors has been approved in a prior Department audit is insufficient to warrant the application of equitable estoppel").

Just as in *Jack Bradley*, the Department was free to reexamine the employment relationship between Veterans and its couriers even if its 1987 audit determined the couriers to be independent contractors, which remains unclear on the record before us. A purportedly

mistaken conclusion regarding the couriers' status based on the purported results of the 1987 audit does not forever bind the Department to the detriment of the unemployment trust fund. The Department was free to revisit the employment status of Veterans' couriers in the 1990 audit. We also note Veterans offers nothing to support its implied claim that the 1987 audit positively induced Veterans' actions. No showing was made that Veterans was prepared to treat its couriers as employees in 1987; Veterans simply continued doing business as usual.

Nor does estoppel apply to any interest charges included in the Department's assessment. *SMRJ*, 378 Ill. App. 3d at 577 ("Absent fraud or injustice, the Department is not estopped from imposing statutory interest on [an employer's] unpaid contributions").

We reject Veterans' estoppel argument against the Department's assessment.

## CONCLUSION

We affirm the Department's assessment against Veterans. Veterans' due process argument was forfeited because it was not raised in its written objections to Director Jordan following Rodgers' recommended decision issued in 1993. The Department's finding that Veterans' couriers were not engaged in independent businesses under section 212(C) of the Act was not clearly erroneous. Finally, even if the Department's 1987 audit found that Veterans' couriers were independent contractors for the period covered by the audit, the Department was not estopped from later reclassifying those couriers and assessing Veterans based upon its 1990 audit.

Affirmed.

R.E. GORDON, P.J., and WOLFSON, J., concur.